AUGUST HATTERSLEY, HAROLD HATTERSLEY, AND ROY
 HATTERSLEY, TRADING AS FULLER TOOL & DIE
 CO., PETITIONERS-APPELLANTS, v. DIVISION OF EM-
 PLOYMENT SECURITY IN THE STATE DEPARTMENT
 OF LABOR AND INDUSTRY, DEFENDANT-RESPOND-
 ENT.

Argued October 10, 1955—Decided October 31, 1955.

*Mr. Howard F. Casselman* argued the cause for appellants (*Messrs. Riker, Emery & Danzig*, attorneys).

*Mr. Herman D. Ringle* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. This is an appeal from a final determination of the Division of Employment Security in the State Department of Labor and Industry, which affirmed the decision of the Director holding that appellant is an employer subject to the provisions of the Unemployment Compensation Law, *N. J. S. A.* 43:21–1 *et seq.* We certified the appeal on our own motion while pending in the Appellate Division.

The appellant, Fuller Tool & Die Co., is a partnership engaged in the business of operating a machine shop. The partnership comprises three individuals, August Hattersley

and his two sons Harold and Roy, and was formed on January 1, 1953 as the successor to August Hattersley, who had, since February 15, 1950, operated the business as an individual proprietorship.

At no time since February 15, 1950 has August Hattersley, or the successor partnership, had in its employment four or more individuals for a period of 20 weeks so as to be constituted an employer under *subparagraph* (1) of *N. J. S. A.* 43:21–19(*h*). The Division held, however, that the partnership was an "employer" subject to the act since August Hattersley, its predecessor, had on February 15, 1950 acquired the organization, trade or business, or substantially all of the assets, of William Tobia and Angelo Coccaro, t/a Fuller Tool & Manufacturing Co., an employer subject to the Unemployment Compensation Act. This holding was bottomed on *subparagraph* (2) of *N. J. S. A.* 43:21–19(*h*), which provides:

"(h) 'Employer' means: * * *
(2) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this chapter; * * *."

The findings of fact are not disputed and may be briefly summarized as follows. For many years prior to 1950, August Hattersley had been employed as a tool maker and factory superintendent for an engineering company and had never been an employing unit or an employer under the New Jersey Unemployment Compensation Law. As a result of a change of ownership of the company by which he was employed, Hattersley lost his job.

Rather than find new employment, which at his age was difficult, he decided to go into business for himself. With capital which he had saved from his prior employment, on February 15, 1950 he purchased the machinery of a tool and die shop which was then owned by the partnership of William Tobia and Angelo Coccaro, t/a Fuller Tool & Manufacturing Co.

At the time of such acquisition, Tobia and Coccaro were registered as an employer with the Division of Employment Security and were subject to the provisions of the New Jersey Unemployment Compensation Law. However, the machine shop which they operated was idle for lack of orders and their lease of the premises in which the shop was located had expired. The bill of sale listed, in a separate schedule, the equipment which Hattersley purchased from Tobia and Coccaro. It consisted of a number of lathes, drill presses and accessory machines and devices, together with certain items of office equipment, including a desk and chair, filing cabinet and typewriter. The bill of sale also recited a covenant on the part of the sellers that they would not "engage in a similar or competing business for a period of three years from the date of" the sale and would not solicit any of the present customers or clients of the Fuller Tool & Manufacturing Co.

According to August Hattersley's testimony, when he took over Tobia and Coccaro's shop, it was virtually shut down. He negotiated a new lease with the owner of the premises and started the business single-handed, acting as salesman by day and working on orders at night. He acknowledged that after February 15, 1950 he continued to use the "Fuller" business name and commercial signs, but only because this was convenient and saved him the expense of purchasing new signs. He did not acquire any books or records of the firm of Tobia and Coccaro, nor did he purchase the accounts receivable or assume any accounts payable. The sellers did not furnish him with any of their customer lists or leads.

About six weeks after taking over the premises, Hattersley's son Harold became a full-time employee and additional help was obtained as business increased. The second son, Roy, became a full-time employee in January 1951 and on January 1, 1953, as already noted, the father and sons formed the partnership which is the appellant here, at the same time changing the trade name of the business from "Fuller Tool & Manufacturing Co." to "Fuller Tool & Die Co."

On behalf of the appellant it is contended, first, that its predecessor, August Hattersley, did not acquire all the

"organization, trade or business, or substantially all the assets" of Tobia and Coccaro within the meaning of *subparagraph* (2) of section 19(*h*), *supra*. It is said August Hattersley did not and never intended to purchase a going concern because there was nothing to keep going, but simply a collection of idle machinery and office equipment to be used in a business which he would attempt to establish.

While we see some merit in the appellant's position in this respect, under the view we take of the statute this contention becomes inconsequential. For present purposes, we may assume that August Hattersley was truly a successor to the business carried on by Tobia and Coccaro.

Nevertheless, the statute, by its terms, does not endow the purchaser of a business with the "employer" status of his predecessor unless the purchaser is himself an "employing unit." An "employing unit" is defined by subsection (*g*) of section 19 as one who has "in its employ one or more individuals performing services for it within this State."

But, as noted in the statement of facts, on February 15, 1950, the date of the purchase, and for six weeks thereafter, August Hattersley had no one in his employ and hence was not an "employing unit" under the Unemployment Compensation Law. That being the case, it would logically follow that the provisions of subsection 19(*h*)(2) are not applicable, since that section expressly applies only to an "employing unit."

The Division concedes that if August Hattersley never was or subsequently became an employing unit, section 19(*h*)(2) would be inapplicable to him. However, it urges that since the statute reads "any employing unit which *acquired*" the business of another, it applies to one who, although not an employing unit on the date of the purchase, subsequently becomes an employing unit, in which case he is, retroactively to the date of purchase, an "employer." It is said that unless the statute is so interpreted, a serious loophole will exist inasmuch as a non-employing unit could purchase the business of another and on the following day hire employees without subjecting itself to the status of an

"employer," and we are reminded that remedial statutes such as the Unemployment Compensation Law are entitled to a liberal construction to effectuate the public and social policies underlying their enactment.

But no matter how "liberal" our construction, we must interpret the statute as it is written. The language employed by the Legislature is, we believe, susceptible of but one meaning: the status of the purchaser as an "employer" is fixed on the date of the purchase and not by events subsequent thereto. Nor do we perceive that this creates any loophole; for if the purchaser on the day following hires four or more individuals and continues them in his employment for some portion of a day in each of 20 different weeks, he becomes an "employer" under the act in his own right and is subject to the act by virtue of *subparagraph* (1) of section 19(*h*). Of course, if he does not hire four or more individuals, as August Hattersley did not in the case before us, then he avoids the coverage of the act. But that is because the Legislature has not seen fit to make the act applicable to employing units which employ less than four individuals and not because of any loophole created by a narrowed construction.

The judgment below is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.