## Dykan Unemployment Compensation Case.

Argued December 14, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Kenneth L. Stein,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY RHODES, P. J., January 16, 1962:

This is an unemployment compensation case in which claimant has appealed from the decision of the Unemployment Compensation Board of Review affirming the referee.

The Board of Review denied benefits to claimant on the ground that she voluntarily terminated her employment without cause of a necessitous and compelling nature. Section 402(b)(1) of the Unemployment Compensation Law, as amended, 43 PS §802(b)(1), provides in part "That a voluntary leaving work because of pregnancy, whether or not the employer is able to provide other work, shall be deemed not a cause of a necessitous and compelling nature: . . ."

The question presented is whether there was competent evidence to substantiate the finding of the board.

Claimant was employed as a clerk-typist at the I-T-E Circuit Breaker Company, Philadelphia, for approximately four years. At the time of her termination of employment on April 7, 1961, claimant was earning $65 per week; she was twenty-two years of age, married, and pregnant.

Claimant admitted that in January, 1961, she was given a bad progress report because of absences from work due to the early stages of pregnancy. Her anticipated delivery date was between September 8 and 11, 1961.

A representative of the employer testified at the hearing before the referee that claimant came to him during the week of March 13, 1961, and told him that she desired to resign. During the week of March 20th, claimant again came to him and at this time submitted

her verbal resignation, effective April 7, 1961. The employer accepted the resignation. The reasons given by claimant to the employer for her resignation were that, since "she could not foresee any improvement in her health, she would, rather than be a burden on the department, . . . resign rather than be fired." Claimant had been absent from work five days and was late four times even after her progress report in January. It was testified that she said she decided to make April 7th the resignation date rather than earlier because her husband was running for vice-president in the union election on April 4th.

On March 24, 1961, when claimant's progress report came up for consideration, the employer decided not to take any action on it because of her resignation as of April 7th and agreed to retain her until that date. However, claimant refused to sign the progress report, and, according to the employer, said that she wanted to withdraw her resignation. Claimant herself testified at the hearing to the effect that she never did submit her resignation and that she anticipated leaving at the end of June.

Whether claimant had a poor attendance record or not, she would have been separated from her employment on or about June 8th. At that time she would have been pregnant for six months and would have been separated under company policy in accordance with the Law. See section 402(f) of the Unemployment Compensation Law, 43 PS §802(f).

Claimant's health and condition of pregnancy were such that she was not working satisfactorily for some time before her six full months of pregnancy. The credible facts logically demonstrate that her voluntary retirement was imminent.

Claimant apparently realized that her voluntary resignation would not entitle her to unemployment compensation benefits. She reversed her position and

sought to withdraw her resignation and, as testified for the employer, ". . . the reason given was that she was certain that her health would be improved and . . . that she really desired dismissal so that she could collect unemployment compensation."

We are of the opinion that there was ample evidence for the board to find that claimant left her job voluntarily due to pregnancy. The good faith of claimant's actions and her motive for attempted withdrawal of her resignation were considered in the light of all the facts and circumstances leading up to the termination of her employment. The testimony before the referee was in conflict. The conflict was resolved in favor of the employer. The board concluded that the referee's decision on credibility was neither arbitrary nor capricious.

We have repeatedly held that the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn therefrom are matters for the board. We must examine the testimony in the light most favorable to the party in whose favor the board has found. *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 575, 56 A. 2d 380. We do not believe that the board's ultimate conclusion that claimant terminated her employment voluntarily due to pregnancy was improper. Claimant had a record of absences and lateness from the time of her early pregnancy. She stated that she could see no improvement, that she would become a burden upon the department, and actually submitted her resignation which was accepted. After the review of the progress report on March 24th, at which time no adverse action was taken, she took the opportunity to attempt to qualify for benefits, and completely reversed her position. She contends that she was entitled to a dismissal. We fail to see any merit in her position. We cannot rationalize her attempted withdrawal of her resignation,

in order to attempt to qualify for benefits, with the purpose of the Unemployment Compensation Law.

We do not decide as an abstract proposition whether or not a resignation once submitted voluntarily may be rescinded by an employe so as to compel the employer to initiate a dismissal proceeding. We are satisfied that on the record before us claimant's conduct could have indicated an intention voluntarily to leave her employment because of pregnancy.

"The facts as found by the board, after considering all of the evidence and the reasonable inferences to be drawn therefrom, are supported by competent evidence and are therefore binding on this Court. See section 510 of the Unemployment Compensation Law, 43 PS §830." *Hackey Unemployment Compensation Case,* 194 Pa. Superior Ct. 79, 82, 166 A. 2d 303, 305.

The decision of the Board of Review is affirmed.

WATKINS, MONTGOMERY, and FLOOD, JJ., dissent.