372 P.2d 987

KENNECOTT COPPER CORPORATION EMPLOYEES who were members of or represented by, Office Employees International Union, Local 286; Brotherhood of Locomotive Firemen and Enginemen, Local 844; International Association of Mine, Mill and Smelter Workers, Local 485, Plaintiffs,

v.

DEPARTMENT OF EMPLOYMENT SECURITY OF The INDUSTRIAL COMMISSION of Utah and The Board of Review, Defendants.

No. 9607.

Supreme Court of Utah.

June 19, 1962.

Patterson, Foley & Phillips, Ogden, for plaintiffs.

A. Pratt Kesler, Atty. Gen., Fred Dremann, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs, employees of Kennecott Copper Corporation, seek reversal of an order of the Industrial Commission denying them unemployment compensation on the basis of Sec. 35–4–5, U.C.A.1953, which provides:

> "An individual shall be ineligible for benefits * * * (d) For any week in which it is found by the commission that his unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he is or was last employed."

Kennecott conducts a large mining, (Bingham) smelting and refining (Garfield) operation in Salt Lake County in which it employs about 6,000 employees who belong to a total of 19 unions. The contracts with the unions were to expire on August 1, 1961. Negotiations were being carried on before and continued after that date, resulting in agreements with all of the unions except one: Local No. 1081 of International Brotherhood of Electrical Workers (IBEW) which had 188 workers. An impasse existed with it and on August 17 about 6 a. m. that union commenced a strike and placed picket lines at all entrances to the company's properties. It is undisputed that practically all of the 6,000 employees did not enter the company properties to work the shift commencing at seven that morning; and did not work until the electricians' strike was settled on September 8.

Plaintiffs applied for unemployment compensation covering that period, which was refused by the Unemployment Division. After a hearing, this determination was affirmed by the Appeals Referee; and by the Board of Review of the Industrial Commission.

Plaintiffs' contention is that their respective unions had agreed upon new work contracts; that they were thus not on strike against the company; that they were willing to work but there was no work available for them because operations could not continue without the services of the electricians. On the other hand, the company's position is that it intended to maintain operations even without the electrical workers by expedients available under its open shop contract: by using 26 supervisory electrician personnel; by sending out electrical equipment for repair; and by hiring replacements. It insists that all of its conduct was in accord with its plan to keep the plant in operation and that it did not at any time prior to the strike do anything or make any announcement to indicate that in the event of a strike the plant would be closed.

Upon these opposing claims and conflicting evidence in support thereof the Appeals Referee rejected the plaintiffs' contention, and, among others, made these findings:

"The facts do not show that production operations were stopped by lack of services of the regular electrical workers";

but that,

"the work stoppage was due to the plaintiffs and their co-workers staying away from their jobs";

that,

"when the strike started at 6 a. m. August 17 the company had plans to continue normal operations at the mine, work schedules were posted, electric power was available, foremen had been instructed to put all men to work who reported * * * men who reported to work were given their regular work assignments and there was work for those who chose to work"

and that,

"operations came to a halt only when members of these appellant groups did not report as scheduled and accept their regular assignments to man the equipment."

■ We are obliged to analyze this determination in accordance with the established rules of review: that the evidence is to be looked at in the light most favorable to the findings; and in so doing, if there is evidence of any substance whatever which can reasonably be regarded as supporting the determination made, it

must be affirmed;[1] and conversely, a reversal and the compelling of such an award could be justified only if there was no substantial evidence to sustain the determination *and* there was proof of facts giving rise to the right of compensation so clear and persuasive that the Commission's refusal to accept it and make an award was clearly capricious, arbitrary and unreasonable.

■ Notwithstanding the plaintiffs' attack upon the credibility of the company's evidence and their insistence upon the impossibility of its plant working without the electrical workers, it cannot be said that its evidence was so fraught with frailty as to be wholly incredible. Whether and for how long it could have operated without the electrical workers is not now our concern. It appears that it never was put to a test because, under the facts as found, it was the plaintiffs who first absented themselves from their jobs and thus were the initiating cause of the work stoppage. This brought them within the rule which we think is sound and salutary: that the one who first resorts to the use of work stoppage as a means of putting on economic pressure to settle such a dispute must bear the responsibility therefor.[2]

■ Only by fixing responsibility in this way can the interest of all parties and of society be properly protected. The Employment Security Act was designed to ease the burdens of unemployment and multifarious evils which ramify from it. Its primary purpose is to assist the worker and his family in times when, without fault on his part, he is out of work. The secondary purpose is to provide stability for the general economy by assuring continuity of purchasing power. It is plainly apparent from the Act that it was not intended to be used as a weapon in labor strife.[3] Undoubtedly one of the considerations prompting the prohibition against workers receiving benefits for unemployment resulting from being involved in a strike is the fact that it would be unfair to use funds built up by labor and management jointly to support labor in a contest wherein it was exerting economic pressure against management by striking or by par-

1. Sec. 35-4-10(i) U.C.A.1953 provides: " * * * In any judicial proceeding under this section the findings of the commission and the board of review as to the facts if supported by evidence shall be conclusive * * * "; see Peterson v. Industrial Comm., 102 Utah 175, 129 P. 2d 563.
2. See Teamsters, Chauffeurs, etc. v. Board of Review, etc., 10 Utah 2d 63, 348 P. 2d 558, 561, where we stated: "The basic facts should be recognized and responsibility placed where it belongs. * * * The critical issue is whether the conduct of labor or of management is the real and fundamental cause of the work stoppage."
3. See Olof Nelson Const. Co. v. Industrial Comm., 121 Utah 525, 243 P.2d 951.

ticipating in or supporting a strike so that it was in fact involved therein.

■ Neither the fact that the plaintiffs had no direct dispute with the employer, nor that they did not call their work stoppage a strike is controlling. It is what is done, rather than what the action is or is not called, that gives it its character.[4] It may well be, as plaintiffs argue, that after this IBEW strike was initiated, at least some of these workers indicated a willingness to work and that work was then unavailable. However, all belonged to or were represented by these unions, practically all of whose members refused to go on their jobs the morning of the strike. The fact that there was such concerted action provided a foundation upon which the Commission could justifiably conclude as it did that the unemployment of the plaintiffs was due to a stoppage of work which existed because of a strike in which their group of workers was involved and that they were therefore ineligible for benefits under the statute. There being substantial competent evidence to support the decision, under the rule of review hereinabove set forth,[5] it must stand.

Affirmed. Costs to defendants.

WADE, C. J., and HENRIOD, McDONOUGH, and CALLISTER, JJ., concur.

4. See Discussion in concurring opinion in Lexes v. Industrial Comm., 121 Utah 551 at 565, 243 P.2d 964 at 971.