**GUY GANNETT PUBLISHING CO.**

v.

**MAINE EMPLOYMENT SECURITY COMMISSION and Jessie W. Harris.**

Supreme Judicial Court of Maine.

March 20, 1974.

Preti & Flaherty by John Paul Erler, Portland, for plaintiff.

Merrill A. Tracey, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

In this appeal, taken from a Superior Court ruling upholding an award of unemployment benefits to appellee Jessie Harris, we are required to address only one issue:

" . . . whether an employee who voluntarily resigned her employment without good cause attributable to such employment is entitled to unemployment benefits under Title 26 M.R.S.A. Section 1193 by virtue of her attempting to withdraw such voluntary resignation after its acceptance by the employer but prior to her last day of employment with such employer."

The parties have stipulated the facts which give rise to the controversy.

Appellee worked for Guy Gannett Publishing Co., appellant here,[1] from December 14, 1970, until August 13, 1971. She was employed at all times as a credit clerk.

On August 4, 1971, appellee submitted her resignation to Gannett. She gave two weeks' notice, indicating that her last work day would be August 18, 1971.

The resignation was accepted on the date it was tendered.

Shortly thereafter, but prior to August 18th, appellee attempted to withdraw her resignation.

Gannett refused to accept the withdrawal. Moreover, on August 13th, three working days before appellee was to have left the job, Gannett notified her that she need not work the remaining days, but that she would be paid for them. Gannett did in fact pay her through August 18th.

Subsequently, appellee applied for benefits under the Maine Employment Security Act, thus initiating the series of decisions resulting in this appeal.

The application for benefits was first considered by an Employment Security Commission Deputy, who allowed the benefits, after concluding that "(T)he claimant's separation from her regular employment was a discharge not for misconduct connected with her employment."

Gannett appealed this decision on the grounds that the release of appellee from work three days before the termination date was not a discharge in any sense. In a letter accompanying its appeal of the Deputy's ruling, Gannett explained that

"In this instance we quickly recognized that Mrs. Harris was simply putting in her time. Therefore we felt the extra time to search for new employment or prepare for her new job would benefit both of us."

---

1. Section 1221 provides the system under which employers are charged and credited with contributions on the basis of an "experience rating record" which, in practical terms, increases or decreases an employer's obligations to contribute depending upon the frequency and circumstances of employee separations.

As a result of a hearing on Gannett's appeal, a Commission Appeals Referee set aside the Deputy's decision and disallowed benefits. The Referee found that appellee Harris had been experiencing difficulty with her work and with a new supervisor, that she was concerned that she could not continue without some help with her responsibilities, and that she believed her offer of resignation would prompt the company to provide her with assistance in the form of a helper. The Referee therefore concluded that

". . . it was the claimant who initiated a chain of events which ultimately resulted in her unemployment . . . . (T)he claimant left her regular employment voluntarily without good cause attributable to such employment and voluntarily without good cause attributable to such employer, within the meaning of Sections 1193–1 and 1221–3 of the Employment Security Law."

On Mrs. Harris' appeal to the full Commission, the Referee's decision was in turn set aside and benefits restored. The Commission found as a fact that appellee had served notice "primarily for the purpose of securing additional help in her work as a credit clerk, not actually wishing to resign," and further determined that she was "discharged" but not for misconduct within the meaning of the applicable statutes.

As we have already noted, this final Commission ruling was sustained on Gannett's appeal to the Superior Court. In its order, the Court stated:

"It is clear that the original claimant Jessie W. Harris was not discharged for misconduct connected with her work, but was discharged by the employer."

For reasons hereinafter discussed, we now sustain the appeal from the order of the Superior Court.

The law of Maine governing the eligibility for unemployment compensation is contained in Title 26 M.R.S.A., which also provides for compensation claims procedures, employers' contributions and coverage, and establishment and operation of the Employment Security Commission.

At the time of the events under consideration here, 26 M.R.S.A. 1193 provided:

"An individual shall be disqualified for benefits:

1. Voluntarily leaves work.

A. For the week in which he left his regular employment voluntarily without good cause attributable to such employment, or with respect to a female claimant who has voluntarily left work to marry, or to perform the customary duties of a housewife, or to leave the locale to live with her husband, or to a claimant who has voluntarily removed himself from the labor market where presently employed to an area where employment opportunity is less frequent, if so found by the commission, and disqualification shall continue for 12 weeks immediately following such week or until claimant has earned 8 times his weekly benefit amount, whichever occurs first . . . .

2. Discharge for misconduct. For the week in which he has been discharged for misconduct connected with his work, if so found by the commission, and disqualification shall continue for 12 weeks immediately following such week or until claimant has earned 8 times his weekly benefit amount, whichever occurs first."

In DuBois et al. v. Maine Employment Security Commission, 150 Me. 494, 505, 114 A.2d 359, 365 (1955), we said:

"The Commission's findings of fact, when supported by any credible evidence, are conclusive. Judicial review is limited to the correction of errors of law. When the Commission decides facts contrary to all of the credible evidence in

the case, it has committed an error of law . . . . *When no dispute as to the facts exists or is possible upon all the evidence, the question becomes one of law."* (Emphasis supplied)

The rights of the parties must, in this case, be determined by ascertaining as a matter of law whether the undisputed facts demonstrate a "discharge," as the presiding Justice found, or, in the parlance of those regularly exposed to such issues, a "voluntary quit."

We have found that very nearly the precise issue confronting us here has been litigated elsewhere.

The Pennsylvania Superior Court has twice considered the effect of a notice of resignation followed by an attempted withdrawal. In Dykan v. Unemployment Compensation Board of Review, 197 Pa.Super. 153, 177 A.2d 160 (1962), the Court affirmed a denial of benefits to an employee who had tendered a resignation due to pregnancy, and later sought to withdraw it for the apparent purpose of forcing a dismissal and thereby qualifying for unemployment compensation. Unlike the case before us now, the Pennsylvania Court was required to consider the claimant's *bona fides,* or lack of it, in first offering and then renouncing her resignation.

Relying upon *Dykan,* the same Court in Soyster v. Unemployment Compensation Board of Review, 197 Pa.Super. 547, 180 A.2d 123 (1962), upheld a disqualification from benefits where the employee resigned with two weeks' notice because of dissatisfaction with another employee, but attempted to withdraw the resignation three days later. The Court specifically noted that the employer had already secured and was training a replacement, i. e., that the resignation was "accepted and acted upon." 180 A.2d at 124.

By contrast, in Mauro v. Administrator, Unemployment Compensation Act, 19 Conn.Sup. 362, 113 A.2d 866 (1954), an award of benefits to an employee who sought to withdraw a resignation was upheld notwithstanding the fact that a replacement had been hired by the employer. The Connecticut Court stressed,

". . . the general theory of unemployment compensation laws, which is that compensation is to be provided for unemployment which is involuntary on the part of the employee . . .,"

and concluded that

"(A)t the time (the employee) left the job, his leaving was not voluntary, it was involuntary. His status never ripened into that of a person who has voluntarily become unemployed." 113 A.2d at 866–867.

More recently, in Cotright v. Doyal, La., 195 So.2d 176 (1967), benefits were extended to an unemployed "salad girl" who had likewise resigned, changed her mind, and "became unemployed" upon her employer's refusal to accept her withdrawal of the resignation, because a replacement had been hired. The Louisiana Court reasoned that:

"By retracting her notice of leaving . . . and remaining available and desiring to continue her employment we opine that her status was as one who did not voluntarily become unemployed, or stated somewhat differently, she never *left* her job until so directed by her employer." 195 So.2d at 179. (Original emphasis)

We have stated that

". . . a separation by act of the employer, for example, by discharge or layoff is involuntary, and by will of the employee is voluntary." Toothaker v. Maine Employment Security Commission, Me., 217 A.2d 203, 206 (1966).

■ The issue before us is of first impression in this State.

We do not find the other authorities which have allowed benefits to be of controlling significance here.

In Steward v. Maine Employment Security Commission, 152 Me. 114, 120, 125 A. 2d 83, 86 (1956), we said:

" . . . that statutes such as our Maine Employment Security Law are remedial and must be liberally construed for the purpose of accomplishing their objectives."

However, "(N)o matter how *'liberal'* our construction, we must interpret the statute as it is written." *Steward,* supra, 125 A.2d at 86; Hattersly v. Division of Employment Security, 19 N.J. 487, 117 A.2d 607 (1955).

Our reading of the Maine Employment Security Law does not permit the extension of unemployment benefits to appellee Harris.

A resignation, when voluntary, is essentially an unconditional event the legal significance and finality of which cannot be altered by the measure of time between the employee's notice and the actual date of departure from the job. An employer who accepts an unequivocal notice of resignation from an employee is entitled to rely upon it, to the extent of preparing in one manner or another for the employee's absence, unless, of course, the employer chooses to return to *status quo* by rehiring the employee, or accepting a retraction of the notice.

Absent such action by the employer, however, we are unable to say that a resignation matures *only* upon the final, physical exit of the worker from the job site. Were this the case, the employer would be unable to hire a replacement or otherwise adjust his work force except at his peril, subject to the wishes of an indecisive employee.

Appellee Harris voluntarily left her regular employment "without good cause attributable to such employment,"[2] and appellant Gannett accepted her resignation. It is immaterial that no actual replacement had been hired, and we do not regard the early release of appellee, with full pay to the end of the notice period, as a "discharge" within the meaning of the Employment Security Law.

The Superior Court erred in sustaining the ruling of the Commission.

The entry must be and is,

Appeal sustained.

2. 26 M.R.S.A. § 1193(1)(A).