GRANITE SCHOOL DISTRICT, Plaintiff,

v.

Lila N. BERRY and Industrial Commission of Utah, Defendants.

No. 16487.

Supreme Court of Utah.

Feb. 5, 1980.

Daniel W. Anderson and M. Byron Fisher, Utah of Fabian & Clendenin, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., K. Allan Zabel, Sp. Asst. Atty. Gen., Salt Lake City, for defendants.

CROCKETT, Chief Justice:

Plaintiff Granite School District seeks reversal of an order of the Industrial Commission granting defendant Lila Berry unemployment benefits after she voluntarily terminated her employment with it.

Plaintiff's contention is that because the defendant had voluntarily quit her job and failed to respond to an offer of other employment with it, she was not "able and available for work" which Section 35–4–4(c), U.C.A.1953, requires as a predicate to eligibility for unemployment compensation.[1]

Defendant Berry was employed by plaintiff for fifteen years, from 1963 to 1978, where she had attained the position of School Foods Coordinator. Shortly after the beginning of the fall term of 1978 she

---

1. Section 35–4–4(c), U.C.A., 1953, of the Utah Employment Security Act provides:

 An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found by the commission that:

 \* \* \* \* \* \*

 (c) He is able to work and is available for work.

decided that her health would no longer permit her to perform those duties and quit her job on October 9th. Her doctor certifies that she was suffering from emotional stress related to her employment; and that he advised her that she should either not work, or change her occupation, or her employer. The evidence also indicates that her department representative recognized that she was experiencing conflicts related to her employment and that that was the primary reason for her leaving.

She filed a claim for unemployment benefits with the Utah Department of Employment Security (hereinafter referred to as Department). She was denied benefits for the period October 29, 1978 through December 2, 1978 on the grounds her termination was voluntary and without good cause. However, her doctor certified that she was ready for resumption of employment as of November 15, 1978. The Department ruled that she was eligible for benefits beginning on December 3rd.

In January 1979, when the plaintiff received a bill[2] for the unemployment benefits being paid to the defendant, it sent her a letter requesting that she contact the school's food service coordinator in order to be considered for further employment with plaintiff. She made no effort to respond.

Upon the basis of the foregoing the plaintiff argues that the evidence does not support the findings of the Commission; and that she is not entitled to unemployment compensation because she refused to accept its offer of a job. The defendant counters with evidence that after her doctor said she could return to work (November, 1978) she contacted more than a half a dozen employers personally and a similar number by telephone to obtain some suitable employment. She said that returning to work for the plaintiff would bring about a recurrence of the difficulties and hazards to her health which had required her to quit.

We appreciate the merit of the plaintiff's argument that an employee is not entitled to unemployment compensation if she quits without reasonable cause, or refuses an offer of suitable employment, or unless she makes reasonable efforts to obtain employment. The other side of the coin is that an employee is not a bond slave to an employer, but has the right to voluntarily terminate employment if there is a justifiable reason for doing so; and an employee should not be compelled to return to employment which has proved to be hazardous to her health, physical or mental.

 The question as to whether the employee has acted in good faith and is in fact "able and available for work" is for the Commission to determine. It having found the issues in favor of the defendant, under the standard rule of review, this Court will not upset that finding so long as there is a reasonable basis in the evidence to support it.[3] Applying that rule to the record herein, including the corroboration of the defendant by the medical evidence, we are not persuaded that the finding of the Commission should be disturbed.

Affirmed. No costs awarded.

MAUGHAN, WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting):

In order to present my view of this case, I deem it necessary to present a more comprehensive statement of the attendant facts and circumstances which gave rise to this proceeding than does the main opinion.

On October 8, 1978, defendant tendered her resignation by letter to Mr. James C. Gatherum, director of plaintiff's School Food Services. The letter read as follows:

> Dear Jim: I am writing this letter to inform you that I am unable to continue my assignment as coordinator in the School Foods Department due to some surgery which I underwent this past July and a slight heart condition, I am unable to continue in the stress-filled situation

---

2. Pursuant to section 35–4–7.5, U.C.A., 1953.

3. *Martinez v. Board of Review*, 25 Utah 2d 131, 477 P.2d 587 (1970); *Gocke v. Wiesley*, 18 Utah 2d 245, 420 P.2d 44 (1966).

that my position has entailed. I am sorry that I was not able to fill the contract that I signed for the year 1978–79 and I am unable to give the proper two weeks, however, at the insistence of my doctor and the concern of my husband and family, I have no other choice. Thank you and the district for the opportunity I have had to be part of the School Foods for the past fifteen or so years. They will be very memorable years to me. Sincerely, Lila M. Berry.

On her "Statement on Voluntary Quit" filed with the Department of Employment Security (hereinafter "department") and dated November 6, 1978, defendant listed job stress and inability to work for her department director as the reasons for terminating her employment. Specifically, she stated "I was already working more than 8 hrs. per day most days & he expected me to take over some other duties that would have kept me another 30 min. per day most days. He was very rude and demanding and very unreasonable to work for and resented paying my salary."

On the back of the notice sent to advise plaintiff that defendant had filed a claim is a note to the department from plaintiff (signed by William S. Green, of plaintiff's Personnel Department) which reads as follows: "[November 7, 1978] Lila Berry removed herself from the job market because of health reasons. Please do not approve unemployment benefits if she is not able to work. If she is healthy send her back to Granite."

On November 13, 1978, a Dr. Youngblood rendered a medical report. In that report, the doctor diagnosed defendant's illness, injury, or disability as emotional stress and related instability due to lack of self-esteem. The physician recommended the claimant should take time off from work, change occupations, change employers or discontinue working, until November 13, 1978, at which time he certified the claimant was able to work five eight-hour days per week.

The department representative who reviewed defendant's claims denied unemployment benefits on November 28, 1978, for the following reason: "The primary reason claimant left this job is because of personal conflict with supervisor. Health reasons were clearly secondary."

On December 8, 1978, defendant filed another statement regarding claims for benefits which read as follows:

I request reopening my claim. I have not looked for work up until Dec. 4, 1978 because I was waiting for a verdict on unemployment insurance. I have begun to make a work search. . . .

I did not pursue any job leads at Sunny Girl Temporaries because of low pay. The wages ran from $2.90 to $3.00 an hour. These wages are too low for me to consider. I left an application at Mt. Bell. I asked to be considered for any type of job that did not require typing. Mt. Fuel told me they had no openings for personnel work or anything else. I have called news ads out of the paper. I have been told I would be contacted if no one else filled the position for the receptionist jobs.

I would consider $4.00 to $5.00 an hour for work. I will accept personnel work at that rate, in one of the malls. I do not want to deal with parking problems downtown. I am registered for dietetic technician. I am aware that without a degree, my opportunities for hire are limited. I do not wish to check with hospitals at this time. I cannot consider working shift work or on weekends. I need to be home with my husband.

I have contacted Salt Lake Board of Education for coordinator work. They did not have this type of position.

I have been advised of the job counseling section. I have been advised of the possibilities with city, county, state, and federal employment centers. I have been advised to contact several employers per week for work, keeping a list of employers, dates of contact, type of work, and results.

Subsequently, on December 28, 1978, another department representative ruled defendant able and available for work and approved payment of unemployment compensation. Plaintiff was not advised of such decision until late in January, 1979 when it was billed for the benefits paid. On January 25, 1979, Mr. Green wrote two letters on behalf of plaintiff. One was addressed to defendant and indicated that if her medical condition had improved to a point where she was now available for work, she was requested to contact Mr. Gatherum about a job.[1] The other letter was addressed to the Industrial Commission, giving notice of plaintiff's intent to appeal the decision which awarded defendant unemployment benefits.

A hearing before an appeal referee was conducted on February 13, 1979. In that proceeding, the record indicates that defendant had accepted a part-time $3.00 to $3.50 hourly rate job doing filing and light typing for inventory control at a department store service center.

Evidence was admitted as to defendant's efforts to find employment. She apparently contacted several employers both by telephone and in person. She testified as follows:

Referee: Okay. What kind of work were you available for or looking for?

Claimant: I have my list here if you care to go over them, but I have been looking for part-time office or part-time selling or something like that.

Referee: Were you available only for part-time work?

Claimant: No, I have been interviewed for several full time, but I did prefer part time.

Defendant's husband testified that a primary reason defendant quit was to avoid taxes, as follows:

Mr. Berry: It's true that she made a good salary, but, uh, me and, uh, just, we have no dependents. We figure that it was costing us money for her to work full time also. This is my consideration. Making $12,000 a year added with mine and she was not getting home with half of her money and all we were doing was providing the Federal government with a good substantial wage every month. This was a tax break in our favor for her not to work as much as she had been working.

Referee: But, on the other hand, if she left for the purpose of cutting down the income tax, and that was the main purpose, this would not qualify her as eligible for unemployment benefits.

Mr. Berry: This wasn't the main purpose at the time. This is just one of the things we talked about after she had left.

Based on the above evidence, the appeal referee found that the claimant was available for work with other than her base-period employer (plaintiff). The referee also concluded that the work available with plaintiff was not suitable work, based upon the medical certification.

This decision was subsequently referred to the Industrial Commission Board of Review which upheld the decision of the referee. Finally, the Writ of Review was taken before this Court.

I agree with the majority that a Commission order should be sustained whenever there is substantial evidence to support it.[2] However, I do not agree that there is substantial evidence to support the Commission's decision in the instant case.

The basic purpose of our Employment Security Act is to "provid[e] a cushion against the shocks and rigors of unemployment."[3] To be eligible for unemployment compensation, a person must be available

---

1. It was later indicated that defendant's previous job was available, as well as other part-time work if she so preferred.

2. *Martinez v. Board of Review, Department of Employment Security*, 25 Utah 2d 131, 477 P.2d 587 (1970); *Kennecott Copper Corp. Employees v. Department of Employment Security*, 13 Utah 2d 262, 372 P.2d 987 (1962).

3. *Singer Sewing Machine Co. v. Industrial Commission*, 104 Utah 175, 134 P.2d 479 (1943).

full-time[4] on an unrestricted basis.[5] This Court has very recently unanimously held that for one to be "available for work," he should be available under what is the generally accepted normal working hours and conditions.[6] A claimant is ineligible for unemployment compensation when he voluntarily leaves his employment without good cause and remains ineligible for benefits so long as he continues to refuse to accept suitable work offered him by his employer.[7] Good cause has been defined as such cause as would similarly affect persons of reasonable and normal sensitivity, and is limited to those instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances. Furthermore, in order to have good cause for leaving work, an employee with grievances about his employment must indicate an effort to work out the problems unless he can demonstrate that such effort would be futile.[8]

Once a determination has been made that a person has voluntarily left his employment *without cause*, and that the former employer has indicated a willingness to rehire the person, the evidence to support what effectively amounts to a reversal of the earlier determination must be substantial. In the instant case, the only evidence which will support the referee's decision is the defendant's own self-serving declarations and arguably, the report of a doctor.

The report was available at the time of the initial decision which denied defendant benefits. In any event, the report indicated that the defendant's disability was only temporary and that she was considered to be physically able to perform work as of November 13, 1978.

Despite this diagnosis, defendant maintains that her medical condition was not temporary but continued so as to justify her refusal to accept employment with plaintiff. No medical data supports defendant's position that she was physically unable to work for plaintiff after November 13, 1978.[9] The report is not to be read to mean that defendant is able to work but unable to work for plaintiff. Although a physician may be qualified to render an opinion that a particular job or position held by a claimant is unsuitable, no physician is qualified to determine categorically that a specific employer itself is unsuitable, and that all positions available with that employer are unsuitable for a claimant.

Due to the absence of substantial evidence to support the decision, I would reverse the decision which awarded defendant unemployment compensation.

4. *Alvord v. Board of Review of Industrial Commission*, 1 Utah 2d 388, 267 P.2d 914 (1954).

5. *Denby v. Board of Review of Industrial Commission*, Utah, 567 P.2d 626 (1977).

6. *Schultz v. Board of Review*, Utah, 606 P.2d 254 (1980).

7. *Logan-Cache Knitting Mills v. Industrial Commission*, 99 Utah 1, 102 P.2d 495 (1940).

8. Supra, footnote 5, and cases cited therein.

9. To be eligible for unemployment benefits, a claimant must be able to work and available for work. U.C.A., 1953, 35–4–4(c). Therefore, if defendant is deemed unable to work (as she claims), she is ineligible for benefits.