Bettina ROSAY, Plaintiff,

v.

## INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

### No. 17704.

Supreme Court of Utah.

Nov. 6, 1981.

2. U.C.A., 1953, 35–4–10(i).

Arthur F. Sandack, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Floyd G. Astin, K. Allan Zabel, Asst. Attys. Gen., Salt Lake City, for defendant.

HALL, Chief Justice:

This is a review of the Commission's denial of unemployment compensation claimed after plaintiff's termination as research director of a mosquito abatement district, a public-supported agency of Salt Lake County. The termination was for plaintiff's alleged violation of U.C.A.1953, 35–4–5 which reads, in part, as follows:

An individual shall be ineligible for benefits . . . :

(b)(1) For the week in which the claimant was discharged for an act . . . which is deliberate, willful, or wanton and adverse to the employer's rightful interest, . . . .

The record reflects the following competent evidence:

The plaintiff, Bettina Rosay, had been employed with the district for 13 years, one of a small group subject to few working rules, where there were no strict requirements as to the plaintiff's duties and time of performance, she having been employed on an hourly basis. The record reflects a history of absenteeism on her part, that had been tolerated, but frowned upon by the district director. This had been called to her attention several times, until she was sent a formal letter of warning dated May 27, 1980, which read as follows:

You failed to report to work on the 12th, 13th and 14th of May 1980 but did call on the 14th to indicate you would come on the 15th. Again on the 19th and 20th you failed to report to work or to indicate you would not be able to come. You were notified of a staff meeting to be held on the 27th of May but again did not report or call to indicate why you were unable to come. Similar patterns have been observed in the past.

This letter is to be placed in your file and you are hereby notified that if this persists, you will be dismissed. Please note

Number 640, Absence without leave of the Salt Lake County Policy and Procedure Manual.

For a time thereafter there appeared to be a change in her working habits that generated no considerable complaint until August of the same year. Plaintiff was requested to prepare a shipment of mosquitoes to California when, without ceremony, she advised her boss that she could not comply because she had other things to do. She was then told to do it the next week, but she failed to show up or notify anyone of her contemplated absence the following Monday and Tuesday (August 11 and 12). Plaintiff did call on Wednesday (August 13) and advised a fellow employee that she would not be to work that day. She admitted she was not ill.

On Thursday, August 14th, plaintiff returned to work, and was given a letter of termination. The termination letter read as follows:

You will recall my letter to you dated May 27th regarding absence without leave. Again on August 11th and 12th you did not report to work or notify us. On the morning of August 13th you did call and said you were not coming because of back spasms.

Other employees are required to be here every day at a specified time unless other arrangements are made. Allowing you to come and go as you please creates an unacceptable double standard and your long term persistant [sic] pattern has been destructive to morale.

In addition the permanent staff and I all feel that you do not have a sense of loyalty to the program or a good recognition of the need of working with other staff members as a team to accomplish district objectives.

For these reasons, your services to the district will be terminated effective September 15, 1980. Any accrued vacation time or sick leave will be paid after that.

At the hearing on plaintiff's claim for unemployment compensation, she testified

that she did not take the May letter seriously. Although she stated on her application for a claim that her only employment for the last 18 months was that now terminated, she admitted outside part-time work for the "University," at the "Historical Society," and the "State Mosquito Organization."

As to the California shipment, plaintiff explained that it was a large, well-funded, ongoing project. She indicated that her disinclination to ship the mosquitoes was because she could not see the point of it. All she knew was that if she shipped the mosquitoes, her boss would get free trips to California. The director disavowed any such purpose. Plaintiff also testified that the reason she did not work on August 11 and 12 was that she had other things to do and "I think the trip to Midvale just wasn't worth it." The evidence indicated that other employees interrupted their own work to get the shipment out.

Plaintiff showed little interest in seeking new employment so as to qualify for unemployment compensation under the statute. She admitted that had she taken reasonable steps she could have found other employment, her reason for not doing so being "discouragement."

The director conceded that the work rules were loose and there was considerable joking about firing generally. He testified, however, that he had had several serious conversations with plaintiff to the effect that her absenteeism could not continue. He also testified of the formal letter warning of the results, if it did continue.

Although plaintiff herself contended she had good cause to quit, she did not quit. She did not take seriously the written warning of termination nor did she present any proof, which was her burden to do, showing any good cause for quitting or being terminated. By her own statements, she indicated there was no such good cause because the rules were lax and therefore gave good cause even to remain without concern over being fired.

The plaintiff takes the position that because of the penal nature of the legislation, doubts should be resolved in her favor.

There appears to be little doubt as to plaintiff's indifference to her employment or her disruptive conduct and absenteeism. Neither is there doubt as to the resulting morale and working conditions, nor as to plaintiff's failure to show good cause for leaving, which she did not do because of her termination.

Plaintiff cites authorities touching the nature and extent of what constitutes "good cause" for termination. There is no doubt as to the sufficiency of evidence in support of the findings entered by the appeals referee to the effect that the plaintiff was terminated for good cause shown. These findings were unanimously adopted by the Commission. This Court on a number of cases, has spoken of the scope and dispositive nature of the Commission's findings and orders, in such cases involving unemployment compensation claims. See e.g. *Martinez v. Bd. of Review*, 25 Utah 2d 131, 477 P.2d 587 (1970); *Gocke v. Wiesley*, 18 Utah 2d 245, 420 P.2d 44 (1966); *Kennecott v. Dept. of Emp. Sec.*, 13 Utah 2d 262, 372 P.2d 987 (1962). In *Kennecott*, the Court set forth the standard of review as follows:

> We are obliged to analyze this determination in accordance with the established rules of review: that the evidence is to be looked at in the light most favorable to the findings; and in so doing, if there is evidence of any substance whatever which can reasonably be regarded as supporting the determination made, it must be affirmed; and conversely, a reversal and the compelling of such an award could be justified only if there was no substantial evidence to sustain the determination *and* there was proof of facts giving rise to the right of compensation so clear and persuasive that the Commission's refusal to accept it and make an award was clearly capricious, arbitrary and unreasonable. [Citation omitted.]

The order of the Commission is affirmed.

STEWART, HOWE and OAKS, JJ., concur.