**WEST JORDAN, a municipal corporation, Plaintiff,**

v.

**C. Brian MORRISON, and Board of Review of the Department of Employment Security, Industrial Commission, Defendants.**

**No. 17786.**

Supreme Court of Utah.

Nov. 8, 1982.

Stephen G. Homer, West Jordan, for plaintiff.

David L. Wilkinson, Atty. Gen., Floyd G. Astin, Asst. Atty. Gen., K. Allan Zabel, M. Dirk Eastmond, Salt Lake City, for defendants.

DURHAM, Justice:

This case is an appeal by the City of West Jordan (the employer) from a decision by the Board of Review of the Industrial Commission of Utah (the Board) which affirmed an award of unemployment compensation benefits to C. Brian Morrison (the claimant).

On November 26, 1980, the claimant submitted a letter to the employer which included the following:

TO WHOM IT MAY CONCERN,

I am writing this letter in protest to express my severe feelings of disappointment and unfairness as a result of the decision made in choosing the new shop leadworker.

\*  \*  \*  \*  \*  \*

Up until now I've been happy and quite satisfied with my employment with the City and hoped to work it through to retirement . . . .

There are more reasons I would be willing to discuss verbally as I don't wish to create hostilities, or blemish the character of any of my co-workers. As it stands, the dicision [sic] for not accepting me to the position I feel is extreemly [sic] unfair, and if it is maintained, then please accept this as my letter of resignation and advance notice that my last day will be December 10, 1980.

Upon receiving the letter, the employer immediately accepted the claimant's resignation, making it effective as of the date of the letter. The claimant was not allowed to continue to work through the following two weeks to the date of his resignation.

In January, 1981, the claimant applied for unemployment compensation benefits and was declared eligible as of January 11 to receive $134 per week for 34 weeks, for a total of $4,556. As a nonprofit organization, the employer has elected under U.C.A., 1953, § 35–4–7.5, to make reimbursement payments for benefits paid by the State Department of Employment Security in lieu of making regular contributions to the unemployment compensation fund. Thus, the employer appealed the eligibility decision to an Appeal Referee and then to the Board of Review, both of which affirmed the finding of eligibility. In this appeal, the employer again argues that an employee who voluntarily resigns with two weeks' notice is not entitled to unemployment compensation benefits beginning six weeks later merely

because he was not allowed to work for the two-week period.

The resolution of this issue turns on our reading of U.C.A., 1953, § 35–4–5(a), (1981 Supp.), which states in part:

An individual shall be ineligible for benefits or for purposes of establishing a waiting period:

Voluntarily Leaving Work.

(a) For the week in which the claimant left work voluntarily without good cause, if so found by the commission, and for each week thereafter until the claimant has performed services in bona fide covered employment and earned wages for such services equal to at least six times the claimant's weekly benefit amount; provided, that no claimant shall be ineligible for benefits if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification.

The commission shall in cooperation with the employer consider for the purposes of this act, the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience.

The employer emphasizes that the real issue in this case is the question of the claimant's eligibility for the period beginning January 11, and that the period between November 26 and December 10 is irrelevant to that determination. The employer asserts that because the claimant would have left work voluntarily on December 10 anyway, his eligibility a month later should not be affected by the employer's decision to make the resignation effective immediately. The employer urges an interpretation of § 35–4–5(a) which would state, in effect, "An individual shall be ineligible for benefits ... for [any] week in which the claimant left work voluntarily without good cause ... *and for each week thereafter* ...." *Id.* (Emphasis added.) In other words, the employer would have us consider the week in which the claimant offered to resign without regard for the week in which he actually left work.

We have frequently stated that this Court's primary responsibility in construing legislative enactments is to give effect to the Legislature's underlying intent. *See, e.g., Millett v. Clark Clinic Corp.,* Utah, 609 P.2d 934 (1980). We have also said that a statute should be applied according to its literal wording unless it is unreasonably confused or inoperable. *See Gord v. Salt Lake City,* 20 Utah 2d 138, 434 P.2d 449 (1967). We must assume that each term in the statute was used advisedly by the Legislature and that each should be interpreted and applied according to its usually accepted meaning. Where the ordinary meaning of the terms results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not the duty of this Court to assess the wisdom of the statutory scheme. *See, e.g., Knox v. Thomas,* 30 Utah 2d 15, 512 P.2d 664 (1973); *Gord, supra.*

With these principles in mind, we hold that the ordinary meaning of the terms does not support the interpretation advanced by the employer. It is clear that the purpose of § 35–4–5 is to set out various conditions under which a claimant is ineligible for benefits. One of these conditions is the voluntary departure from employment without good cause. By its wording, the statute directs our attention to the week in which the claimant left work—not the week that he might have left work, or offered to leave work, but the week in which the claimant actually *left* work. There is no question that the claimant left work the week of November 26, 1979, and that his leaving *that week* was not voluntary. In its decision, the Board affirmed the claimant's eligibility "on the grounds the claimant was discharged from his employment with the City of West Jordan but not for actions ... which are disqualifying ...." The Board went on to state:

In cases such as this, a policy that looks to the immediate cause of the claimant's

unemployment is consistent with the intent and purpose of the Employment Security Act .... [I]t was the employer's decision to terminate the claimant rather than accept his nature of resignation, which has led to the result now faced by the employer.

The employer argues that this interpretation brings about a result unintended by the Legislature by awarding benefits to one who intended to leave work voluntarily, and that at most, the claimant should receive benefits for just the two-week period he was unemployed before the effective date of his resignation. It is true that the amount of unemployment compensation, over $4,000, seems disproportionate to the amount of time during which the claimant was involuntarily unemployed. Nevertheless, the language of the statute is unambiguous: the week in which the claimant actually leaves work is the determinative factor regarding subsequent eligibility. The Industrial Commission's General Rules of Adjudication 135.4 states that "[w]hen a worker submits his/her resignation to be effective at some definite future date, but is discharged prior thereto, the leaving is usually not considered voluntary." The rules adopted by an administrative agency are not binding on the courts and an "administrative interpretation out of harmony and contrary to the express provisions of a statute cannot be given weight." *Utah Hotel Co. v. Industrial Commission,* 107 Utah 24, 32, 151 P.2d 467, 471 (1944). However, the rules promulgated by an agency are entitled to deference where they are made pursuant to legislatively delegated authority and are not contrary to the provisions of the statute. In the instant case, Rule 135.4 appears to comport with the plain meaning of § 35–4–5 as we have interpreted it. Furthermore, we stated in *Continental Oil Co. v. Board of Review of Industrial Commission,* Utah, 568 P.2d 727 (1977):

[A] statute for a forfeiture should be strictly construed, and an ambiguous or doubtful term should be given a construction which is least likely to work a forfei-

ture. The penal character of the provision should be minimized by excluding, rather than including, conduct not clearly intended to be within the provision.

*Id.* at 730.

The facts of this case are undisputed. The Board applied the statute according to the ordinary meaning of its terms. Our role is to sustain the determination of the Board unless the record clearly proves the action of the Board was arbitrary, capricious and unreasonable. *Continental Oil, supra.* We have held that the ordinary meaning of the statute supports the decision made by the Board. If this interpretation brings about a result contrary to the intention of the Legislature, it is a matter for the Legislature to remedy. This Court may not do so. The decision of the Board is therefore affirmed. No costs awarded.

STEWART, OAKS and HOWE, JJ., concur.

HALL, Chief Justice (dissenting):

I do not join the Court's opinion because I view the claimant's letter to his employer as a voluntary resignation without good cause. As such, the letter rendered the claimant ineligible for statutory unemployment benefits.

The primary issue in this case was appropriately identified by the claimant as follows:

When an employee submits a letter of resignation to be effective at some future date and the employer terminates the employment relationship prior to that date, should the claimant be disqualified from receiving unemployment benefits subsequent to the date he stated would be his last day of work in his letter of resignation?

Although this issue has not heretofore been directly addressed by the Court, it is readily resolved by applying basic principles of statutory interpretation.[1] The main opinion sets forth these principles in an analytical scheme; the first being that the Court's

---

1. U.C.A., 1953, § 35–4–5.

primary responsibility in construing legislative enactments is to give effect to the underlying legislative intent. Next, the Court should apply the statute in accord with its literal and ordinary wording, unless the ordinary meaning of its terms would result in a contradiction to the purpose of the statute.

Notwithstanding the main opinion's acknowledgment of these principles, it fails to apply them. The Court's fundamental duty to consider and give effect to legislative intent is expressly recognized, yet in its effort to interpret the ordinary meaning of the statutory terms, the main opinion virtually disregards the underlying legislative intent thereof. Consequently, the determination made as to the ordinary meaning of the statute is inconsistent with its legislative purpose.

This Court has previously articulated the underlying legislative purpose for this particular enactment (Employment Security Act) as follows:

> The Employment Security Act was designed to ease the burdens of unemployment and multifarious evils which ramify from it. Its *primary purpose* is to assist the worker and his family in times when, *without fault on his part,* he is out of work.[2] [Emphasis added.]

Clearly, the legislature's intent was to provide benefits to the unemployed, but to restrict those benefits to a class of workers who become unemployed *by no fault of their own.* Any application of the statute, or interpretation of the ordinary meaning of its terms, should be consistent and reconcilable with this underlying purpose. Although the act should be liberally construed, it does not follow that it should be construed unrealistically or unreasonably, and certainly not so liberally construed so as to defeat the very purpose of the act.

The only variable the main opinion considers in reaching the conclusion that the claimant is eligible for benefits is the "prox-

imate cause" of claimant's leaving work on November 26. The opinion disregards his manifested intent to leave voluntarily on December 10, as well as the fact that it was *his* action in writing the letter of resignation that set in motion the events which resulted in his unemployment. Because he was responsible for his unemployed status, at least beyond the December 10 date, he was not "without fault," and therefore making claimant eligible for benefits is irreconcilable with the legislative purpose of the statute.

The main opinion relies upon Rule 135.4 of the Industrial Commission's General Rules of Adjudication in support of its position, yet it acknowledges that this Court is not bound by such rules. Especially is this so when they are out of harmony with the purpose of a statute, as well as inconsistent with predominant judicial policies.[3]

The main opinion, as well as Rule 135.4, is contrary to prevailing judicial attitudes concerning this same issue. Courts in other states which have addressed this issue have held that the claimant who has submitted a letter of resignation is ineligible for benefits subsequent to the date he or she designates therein as the effective date of termination. Several such cases were cited by the claimant in his brief and an effort was made to somehow distinguish them. However, the cases are not distinguishable, but are indeed contrary to claimant's position.

Although the rulings of the courts of our sister states are not binding on this Court, a judicial opinion which is based on substantially similar facts and statutes certainly demands a higher degree of consideration than a commission regulation. Judicial opinions are inherently more reliable and credible due to the process whereby they are created and adopted. The general rule regarding statutory construction by foreign courts of the same or similar statutory language is found at 73 Am.Jur.2d *Statutes* 166, p. 370 as follows:

---

**2.** *Kennecott Copper Corp. Employees v. Department of Employment Security,* 13 Utah 2d 262, 372 P.2d 987 (1962).

**3.** Rule 135.4 reads in pertinent part: "When a worker submits his/her resignation to be effective at some definite future date but is discharged prior thereto, the leaving is usually not considered voluntary."

It is a general rule of law that, where a question of statutory construction is one of novel impression, it is proper to resort to decisions of courts of other states construing statutory language which is identical or of similar import [citing cases]. Indeed, it is highly desirable that a statute be given a similar interpretation by the courts of the several states wherein it is in force.

The issue presented in this case was decided in the case of *Amado v. Unemployment Compensation Board of Review,* 177 Pa.Supra. 506, 110 A.2d 807 (1955). In that case, the employee gave notice of his resignation to be effective on March 31. That resignation date was accelerated by the employer to March 6, and the employee sought unemployment compensation for the weeks subsequent to the accelerated date and beyond the effective date of resignation. As to the period subsequent to the effective date of resignation, the court held:

> It brings into the unemployment compensation law the principles and theory of legal causation. And by applying these principles to the instant facts we can come to no other conclusion than that the claimant's voluntary resignation was the cause of his unemployment after March 31. Barring this volitional act on the claimant's part he would have had continuing employment for an indefinite period.

*Id.* 110 A.2d at 808.

In *Amado,* the court not only acknowledged the importance of the legislative intent variable, they applied it. Their decision, unlike that of the Court in this case, illustrates a consistency between underlying legislative intent and the ordinary and literal meaning of the relevant statute.

We cannot subscribe to the theory that once the employer elected to discharge him the claimant must be deemed eligible irrespective of causative factors. This act is for the "benefit of persons unemployed through no fault of their own."

How can we realistically say that this claimant's unemployment after March 31 was "through no fault of his own?" The claimant himself set in motion a chain of circumstances leading to his separation and resultant unemployment and he must bear the onus therefor.

*Id.*

As claimant himself points out, this reasoning is followed, not by Pennsylvania alone, but by many other states.[4] He also, however, refers to three specific cases whose decisions purportedly run consistent with the main opinion and Rule 135.4.[5] A closer reading of these cases reveals that they are not supportive of that position; in fact, they are contrary thereto. Each of these three cases involves facts in which the claimant did not officially resign nor give an effective date of resignation. Because there was no definite date of intended voluntary termination, the discharge by the employer in each case constituted an involuntary discharge, making the claimant eligible for unemployment benefits. Although these cases do not discuss what the result would have been if a definite date of resignation had been given by the employee, they do emphasize the fact that their decision is based on the indefiniteness of the employee's intent to quit. The Massachusetts court illustrated this in the following language:

> At the time the claimant was told to leave by the foreman he did not know when, if ever, he would be leaving for the new job and apparently would have continued in uninterrupted employment except for the fact that his foreman became irritated and terminated his employment then and there.[6]

Although the main opinion does not delve into the question of the validity of the claimant's resignation, this issue was argued strongly by the parties in their briefs and should be addressed by this Court. The

---

4. See *Susan M. Ennis v. Employment Division,* 37 Or.App. 281, 587 P.2d 102 (1978); *Guy Gannett Publishing Co. v. Maine Employment Security Commission,* Me., 317 A.2d 183 (1974).

5. (CCH, Mass. ¶ 8219.17); (CCH, Miss. ¶ 8154); (CCH, Wis. ¶ 8969).

6. (CCH, Mass. ¶ 8219.17).

claimant submitted a letter of resignation to his employer which indicated his intention to voluntarily terminate his employment on December 10, 1980. The precise wording of his resignation was:

> As it stands, the decision for not accepting me to the position I feel is extreemly [sic] unfair, and if it is maintained, *then please accept this as my letter of resignation and advance notice that my last day will be December 10, 1980.* [Emphasis added.]

The only condition to that voluntary resignation was that the employer maintain his decision regarding a certain promotion. That condition was satisfied and the resignation became final upon the immediate issuance by the employer of the letter accepting the resignation.

I would therefore hold that Rule 135.4 does not comport with the purpose of the Employment Security Act, and that the board's decision in reliance thereon should be reversed.