# Robert G. Ladeau v. Department of Employment Security

[359 A.2d 648]

No. 308-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed June 1, 1976

*Garfield H. Miller* and *Marguerite Russell Shreve* (On the Brief) of *Black and Plante,* White River Junction, for Plaintiff.

*Raymond S. Fitzpatrick,* Montpelier, for Defendant.

**Larrow, J.** Appellant Robert G. Ladeau was employed for some thirty years by R. E. Roy, Inc., of Woodstock, Vermont, in making oil deliveries and service calls. The circumstances surrounding termination of that employment on May 5, 1975, give rise to this appeal. His claim for unemployment benefits was made subject to a disqualification (ending July 5, 1975, because the termination occurred in a period of high level unemployment) under 21 V.S.A. § 1344(a)(2)(A), for leav-

ing his employment voluntarily without good cause attributable to the employer.

The essential question presented for determination, in common parlance, is whether the appellant quit his job or was fired. The Board decided this question against the appellant, and imposed the disqualification. Although there is indeed serious question whether some of its findings of fact are fully supported by the evidence, and whether undisputed matters were found as fully as appellant was entitled to have them found, we do not reach these considerations. In our view, the findings which were made do not support the disqualification, and we reverse.

The appellant took great pride in a service vehicle assigned to his use. He had objected to the employer on several occasions about its use by others for non-business purposes, with resulting disarray of parts and tools. He found such disarray on May 5, 1975, and spoke to the employer about it at the close of work, when the employer again told him to leave it for use by another. He objected to such use, and was told the employer would use his truck as he saw fit. Claimant then told the employer he "would quit before I would run it in that condition." The employer remarked, "Okay, you can pick up your two weeks' severance pay." The claimant then left, and did not return the following day.

On these facts, as found, the Board concluded that appellant voluntarily left the employ without good cause attributable to the employer "when he took precipitate action not expected of a normally prudent individual and threatened to quit his job; when his remarks were deliberate and intended to provoke his employer to take some action; and when his employer's request was not shown to be capricious or unreasonable." We disagree. The facts found do not support the conclusion.

We accord strong credence to the "recognized competence and expertise" of a regulatory board. *Ellis* v. *Department of Employment Security*, 133 Vt. 533, 536, 346 A.2d 221 (1975). But we cannot extend such credence to a decision which flies in the face of common custom and usage in the employment field. The claimant's remarks were indeed deliberate and intended to provoke action by the employer. But that action was

not, as the Board's conclusion would infer, a termination of the employment. Precipitate as the remarks may have been, it is clear that the "action" which the "long time, trusted employee" intended to "provoke" was termination of the practice of letting the service vehicle be used for pleasure by others inconsiderate of his tools and equipment. We cannot agree that such a protest was, as the Board seems to construe it, a deliberate effort to get himself fired. Nor can we agree that the protest, as framed, was "not to be expected" of an employee with thirty years' standing and resulting trust.

Even beyond these considerations, however, we consider it apparent that the employer, whatever his now professed intent, knew full well that the claimant was not quitting his job; he was firing him. Dismissal, or severance pay, is the payment of a sum of money in addition to back wages or salary to an employee on termination *by the employer* of the employment relationship *for reasons not attributable to the employee.* 53 Am.Jur.2d *Master and Servant* § 81, at 154 (emphasis supplied). We judicially notice, as the Board should have, that absent some contractual or statutory provision, the usage of the labor market makes such payment incident to a firing without cause given by the workman, but not incident to a voluntary quit. The employer's present claim of a quit is totally inconsistent with his on-the-spot offer of severance pay.

We recognize that a finding of intent is a difficult one to make, and that there is often a narrow line, dependent on intent, demarcating a quit from a firing. But we do not feel that the employer's present statement of intent can be permitted to negate the totally inconsistent action he took at the time the employment was terminated.

*The judgment of the Employment Security Board imposing a disqualification upon the appellant is reversed. The cause is remanded for award of benefits consistent with the views herein expressed.*

**Smith, J.** (Dissenting) There can be no doubt that the instant case is of minor consequence, except to the appellant, nor that the opinion of the majority sets forth any new or startling conclusions of law. As the majority points out, the

question presented is more nearly a factual question, rather than one of law, with the only matter for decision being whether the appellant quit his job or was fired.

The answer arrived at by the majority centers about the meaning to be attributed to the employer's use of the words, "Okay, you can pick up your two weeks' severance pay." The majority determined that this phrase was indicative of the employer's intent to fire the appellant. However, the majority opinion neglects to account for the fact that before the words were spoken, appellant had already announced to his employer that if the employer allowed the truck driven by appellant to be used by other employees, then he would quit. In response to the query, "Mr. Ladeau, did you quit or terminate your employment with Mr. Davenport, with E. E. Roy?", Ladeau stated, "If you call that quitting, it was. . . ."

The fact that the employer told Ladeau to pick up his severance pay is, I believe, given undue importance by the majority. The use of that term in the labor market, as judicially noticed by the majority, receives far less than universal acceptance. It is more often the case that whether an employee receives severance pay is determined either by reference to the contractual terms of employment or is established by a policy of the particular employer. *Davidson* v. *Life Savers, Inc.*, 75 Misc.2d 384, 347 N.Y.S.2d 648 (Sup.Ct. 1973). Certainly, it is not the place of the Court to incorporate by judicial notice these kinds of conditions into the employer/employee relationship. *Clarke* v. *Brunswick Corp.*, 48 Mich. App. 667, 211 N.W.2d 101 (1973). There is nothing in the record to indicate that such words were used in this instance by the employer to show a discharge by him of appellant. The only effective result of this statement was to give the appellant more in the way of pay than he would have ordinarily been entitled to under such circumstances. I cannot accept the opinion of the majority that the use of a certain wording by the employer, following appellant's admitted quit, by some legal magic could convert the quit into a discharge. Whatever words the employer might have used, the facts, as found by the Board and supported by the evidence, show that before these words had been uttered, appellant had voluntarily quit his job.