2014 VT 74

# Katherine Kelley v. Department of Labor
## (Maple Leaf Farm Association, Inc., Employer-Appellant)

[101 A.3d 895]

No. 14-036

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed July 18, 2014

*Lauren K. Peach, Vermont Legal Aid, Inc.*, St. Johnsbury, for Plaintiff-Appellee.

*Franklin L. Paulino* of *Bergeron, Paradis & Fitzpatrick, LLP*, Burlington, for Employer-Appellant.

¶ 1. **Crawford, J.** This case turns upon a common question in employment disputes: did the employee jump, or was she pushed? Employer Maple Leaf Farm Association, Inc. appeals from a decision of the Employment Security Board finding that its former employee Katherine Kelley was involuntarily terminated from her position and therefore eligible for unemployment compensation benefits. We affirm.

¶ 2. Employer runs an intensive inpatient drug and alcohol treatment program. Claimant worked for employer as a part-time treatment counselor for seven years. Due to a conflict with a supervisor, claimant resigned from her position in writing on August 29, 2013. She stated in her letter to employer that her last day would be September 19, 2013, and employer allowed her to continue working. Four days later, on September 3, employer terminated her employment and escorted her off the premises.

¶ 3. Claimant applied for unemployment compensation. The claims adjudicator determined that she was not entitled to benefits for the first two weeks after her termination because the accrued vacation pay that employer paid her during that period was in excess of her weekly benefit amount.[1] The claims adjudicator further determined that claimant was not entitled to benefits because she had left employment voluntarily without good cause attributable to her employer.

¶ 4. Pursuant to 21 V.S.A. § 1348, claimant appealed to a referee who conducted an administrative hearing. The referee found that claimant did not leave her employment voluntarily even though she had tendered her resignation because employer discharged her during her period of notice. The referee found that claimant

---

[1] Claimant did not appeal the decision regarding vacation pay.

tendered her resignation on August 29, and that employer agreed to allow claimant to work until the end of the notice period, September 19. The referee found nothing in the record to support a finding that claimant's discharge was for misconduct. The referee found that employer had received a complaint from a patient about claimant, and discharged her for that reason. However, it found that claimant had not received any warnings regarding her performance. The referee therefore modified the determination of the claims adjudicator and held that claimant was entitled to benefits after September 21.

¶ 5. Employer appealed the referee's decision to the Employment Security Board, which adopted the referee's findings and affirmed its conclusions. This appeal followed.

¶ 6. Our review of decisions by the Employment Security Board is deferential, as decisions within the expertise of the Board "are presumed to be correct, valid, and reasonable." *Bouchard v. Dep't of Emp't & Training*, 174 Vt. 588, 589, 816 A.2d 508, 510 (2002) (mem.). We will uphold the Board's findings of fact unless they are clearly erroneous, and its conclusions if they are supported by the findings. *Id.* In general, we also defer to the Board's interpretations of the statutes it is charged with administering. *Blue v. Dep't of Labor*, 2011 VT 84, ¶ 6, 190 Vt. 228, 27 A.3d 1096. The record supports the Board's findings and conclusions in this case.

¶ 7. Vermont's Unemployment Compensation Act excludes employees from receiving benefits if they leave their employment voluntarily. The statute provides:

(a) An individual shall be disqualified for benefits:

. . . .

(2) For any week benefits are claimed . . . until he or she has presented evidence to the satisfaction of the Commissioner that he or she has performed services in employment for a bona fide employer and has had earnings in excess of six times his or her weekly benefit amount if the Commissioner finds that such individual is unemployed because:

(A) He or she has left the employ of his or her last employing unit voluntarily without good cause attributable to such employing unit.

21 V.S.A. § 1344(a).

¶ 8. ■ The Unemployment Compensation Act is a remedial law designed "to remove economic disabilities and distress resulting from involuntary unemployment, and to. assist those workers who become jobless for reasons beyond their control." *Donahue v. Dep't of Emp't Sec.*, 142 Vt. 351, 354, 454 A.2d 1244, 1246 (1982) (citation omitted). Accordingly, "no claimant should be excluded unless the law clearly intends such an exclusion." *Jones v. Dep't of Emp't Sec.*, 140 Vt. 552, 554, 442 A.2d 463, 464 (1982).

¶ 9. ■ ■ The plain meaning of the statute supports claimant's position. Claimant did not "le[ave] the employ" of employer on August 29, the date that she submitted her resignation letter, because she continued to work after that date. 21 V.S.A. § 1344(a)(2)(A). Rather, she left her employment on September 3, the date that employer terminated her employment and escorted her off the premises. This was the date that the employment relationship was severed, and therefore it is the date to which we must look to determine if claimant left voluntarily or involuntarily. See *Trapeni v. Dep't of Emp't Sec.*, 142 Vt. 317, 325, 455 A.2d 329, 333 (1982) ("The term 'left the employ' as used in 21 V.S.A. § 1344(a)(2)(A) refers only to a severance of the employment relationship . . . .").

¶ 10. ■ ■ The question then is whether claimant quit voluntarily or was fired. In determining whether a separation from employment is a discharge or a voluntary quit, we look to the intent of the parties at the time of the separation. See *Gale v. Dep't of Emp't Sec.*, 136 Vt. 75, 77, 385 A.2d 1073, 1075 (1978) (examining intent of employer and claimant on date that claimant stopped working, and holding that claimant did not intend to voluntarily quit where she told employer that she could not work its requested hours); *Ladeau v. Dep't of Emp't Sec.*, 134 Vt. 387, 388-89, 359 A.3d 648, 650 (1976) (looking to intent of parties on date of termination to determine that claimant was fired and did not voluntarily quit). Here, the record supports the finding of the referee and the Board that claimant's intent on September 3 was to work for another two and a half weeks and that employer previously had agreed that she could do so. Were it not for employer's action on September 3, the employment relationship would have continued until September 19, and claimant would have voluntarily left her employment on that date. The record also shows that employer's intent on September 3 was to fire claimant.

A representative of employer testified that after claimant gave her notice, employer received a complaint from a client, which led employer to conclude that "it would be disruptive to have her work out her notice." Employer therefore decided to end claim-ant's employment immediately. Employer's action in escorting claimant from the premises was consistent with a discharge rather than a voluntary resignation.

¶ 11. This case is distinguishable from *MacDonald v. Department of Employment Security*, 136 Vt. 184, 385 A.2d 1117 (1978), cited by employer in support of its position that claimant had no right to keep working once she resigned. In *MacDonald*, the claimant was employed as a waitress ,at a hotel. She gave her employer two weeks' notice. The employer told her that no notice was required or customary in the trade, and she could either remain employed or leave immediately. She left immediately. We affirmed the Board's denial of unemployment benefits to the claimant on the ground that she had left voluntarily without good cause attributable to her employer. *Id.* at 186, 385 A.2d at 1118. We held that "[a]bsent an employment contract provision or a trade usage as to notice to quit, an employee's options do not include a right to specify a future effective date of termination. A voluntary quit is without good cause if it is conditioned in a manner not within the options open to the employee." *Id.*

¶ 12. *MacDonald* differs from this case in two important respects. First, in this case, although employer recognized that it did not require at-will employees to provide advance notice prior to ending their employment, employer had a policy that asked employees to give two weeks' written notice. Second, after claimant gave her written notice, employer agreed to allow claimant to continue working until September 19. Thus, claimant was in a different position than the employee in *MacDonald*, who had no option to continue working through the notice period.

¶ 13. Employer argues that we should follow decisions of other states holding that a voluntary resignation that is followed by a period of notice to the employer voluntarily severs the employment relationship upon its tender. See, e.g., *Guy Gannett Publ'g Co. v. Me. Emp't Sec. Comm'n*, 317 A.2d 183, 187 (Me. 1974) ("A resignation, when voluntary, is essentially an unconditional event the legal significance and finality of which cannot be altered by the measure of time between the employee's notice and the actual date of departure from the job."). *Gannett* and the other cases

relied upon by employer involve circumstances in which an employee voluntarily resigned but then attempted to withdraw the resignation, and the employer refused to reinstate the employee but paid the employee until the end of the notice period. *Id.* at 184. Under such circumstances, the employer has taken no action to terminate the employee prior to the effective date of resignation, and it makes sense to consider the separation to be voluntary. By contrast, employer here fired claimant prior to the end of the notice period and did not pay her wages after the date that she left. The majority of courts in other states have ruled that an employee who is discharged before the effective date of her resignation has not left work voluntarily and is not disqualified from receiving unemployment compensation benefits on that basis. See *Porter v. Fla. Unemp't Appeals Comm'n*, 1 So. 3d 1101, 1103-04 (Fla. Dist. Ct. App. 2009) (listing cases).[2]

¶ 14. ■ Employer asserts that it did pay claimant wages to the end of the notice period, rendering her separation voluntary. See *Gannett*, 317 A.2d at 187 (holding that employee who resigned left voluntarily where employer accepted resignation, told employee not to come to work anymore, and paid employee through end of notice period). Employer apparently is referring to the accrued vacation pay that was paid to claimant after she left employment.

---

[2] As the *Porter* court noted, one line of decisions holds that where an employee who has given notice of resignation is terminated before her resignation becomes effective, she has not left work voluntarily and is entitled to benefits even for the period following her intended date of departure. *Porter*, 1 So. 3d at 1103-04; see also *Coleman v. Miss. Emp't Sec. Comm'n*, 662 So. 2d 626, 628 (Miss. 1995); *Dillard Dep't Stores, Inc. v. Polinsky*, 530 N.W.2d 637, 643 (Neb. 1995); *W. Jordan v. Morrison*, 656 P.2d 445, 446-47 (Utah 1982); *Vieweg v. Gatson*, 546 S.E.2d 267, 270-71 (W. Va. 2000). Another line of decisions holds that an employee who is discharged prior to the effective date of her resignation has not voluntarily left employment, but the employee is entitled to unemployment compensation benefits only for the period between the date of discharge and the effective date of resignation. *Diringer v. Indus. Comm'n*, 712 P.2d 1091, 1091-92 (Colo. App. 1985); *Mason v. Donnelly Club*, 21 P.3d 903, 908 (Idaho 2001); *Redline Express, Inc. v. State Emp't Sec. Bd. of Rev.*, 11 P.3d 85, 89 (Kan. Ct. App. 2000); *Stephen's Nu-Ad, Inc. v. Green*, 423 N.W.2d 625, 627-29 (Mich. Ct. App. 1988); *Ennis v. Emp't Div.*, 587 P.2d 102, 103 (Or. Ct. App. 1978); *Amado v. Unemp't Comp. Bd. of Rev.*, 110 A.2d 807, 808 (Pa. Super. Ct. 1955). Although we conclude that Vermont's statute is inconsistent with the latter cases holding that eligibility for benefits is limited to the period between the date of discharge and the effective date of resignation, we agree with the consensus that a discharge during the notice period is not a voluntary quit.

Employer argues that the statutory definition of "wages" includes vacation pay. See 21 V.S.A. § 1301(12) (" 'Wages' means all remuneration paid for services rendered by an individual, including . . . the cash value of all remuneration paid in any medium other than cash."). The Board disagreed with this interpretation of the statute, distinguishing between wages and annual leave. Employer has not shown that the Board's interpretation of the statute was erroneous as a matter of law. *Blue*, 2011 VT 84, ¶ 6. Further, nothing in the record shows that claimant's vacation pay was remuneration for the period from September 3 to September 19. Rather, it appears that claimant accrued the vacation pay during her previous years of service and that it was employer's practice to pay out the accrued vacation time in addition to wages for any remaining hours worked. As the Board noted, this is a typical policy for employers. Under these circumstances, we cannot agree that employer's payment of vacation pay to claimant was equivalent to paying her wages for the remainder of the notice period.

¶ 15. ■ Finally, we reject employer's contention that claimant's eligibility for unemployment benefits is limited to the period between the date that she actually left her employment and the effective date of her resignation. The version of Vermont's Unemployment Compensation Act in effect at the time of claimant's termination did not limit eligibility under these circumstances. See 21 V.S.A. § 1340 (limiting duration of unemployment benefits to 26 times the weekly benefit amount or 46 percent of total wages paid to individual during base period, whichever is less, and establishing further limits where individual is discharged for misconduct). Although the Legislature has since limited eligibility for unemployment compensation to the notice period when an employee tenders her resignation but is discharged prior to the effective date of that resignation, see 2013, No. 173 (Adj. Sess.), § 5 (codified as amended at 21 V.S.A. § 1343), we cannot conclude that prior to this amendment the Act precluded claimant from receiving benefits beyond that date. See *Jones*, 140 Vt. at 554, 442 A.2d at 464 ("[N]o claimant should be excluded unless the law clearly intends such an exclusion."). The record shows that claimant did not leave her employment voluntarily. Therefore, she is not disqualified from receiving benefits under 21 V.S.A. § 1344(a)(2)(A).

*Affirmed.*