*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-198

DECEMBER TERM, 2014

| | | |
|---|---|---|
| Tony Taylor | } | APPEALED FROM: |
| | } | |
| v. | } | Employment Security Board |
| | } | |
| Department of Labor | } | |
| (Mastaler Cleaning Service Co. Inc., Employer) | } | DOCKET NO. 03-14-002-05 |

In the above-entitled cause, the Clerk will enter:

Claimant appeals a decision of the Employment Security Board upholding the administrative law judge's (ALJ) denial of unemployment benefits based on claimant having left his job voluntarily without good cause attributable to his employer. We affirm.

Claimant was employed as a janitor by Mastaler Cleaning Service for nearly five years. His last day of work was on February 3, 2014. He never returned to work after having a conversation the following day with the employer's vice-president, Ryan Golding. Claimant maintains that in the context of that conversation he was fired, while the employer insists that claimant quit.

Claimant sought unemployment benefits after his job ended. The claims adjudicator initially determined that claimant was disqualified from benefits because he left his job voluntarily without good cause attributable to his employer. 21 V.S.A. § 1344(a)(2)(A). Claimant appealed to the ALJ, who held a hearing in which claimant appeared and testified in person and Mr. Golding testified by telephone for the employer. Mr. Golding testified that he received a text from claimant on Monday, February 3, 2014, stating that he could no longer work with another employee of the cleaning service for personal reasons unrelated to work. As claimant later testified, the basis for his unwillingness to work with the coworker was the coworker's failure to show up as a supervisor for a court-ordered supervised visit that claimant had with his children. According to Mr. Golding, he told claimant that the two of them needed to work out their personal problems because he wanted both of them working the buildings together rather than having to assign each person to a different building. Mr. Golding stated that claimant was persistent in refusing to work with the coworker, so he asked claimant to come in and talk to him the following day.

Mr. Golding testified that the next day claimant continued to insist that he would not work with the coworker, at which point Mr. Golding told him that he would have to either work with him or leave. In particular, Mr. Golding testified that he said, "If you don't like it . . . that's too bad, like there's the door, you can leave." Golding stated that he was not going to make a switch. According to Mr. Golding, at that point claimant asked him if he was firing claimant, to which Mr. Golding responded that he was not firing him but that "if you're not going to get along and you can't go to work, then, yeah, there's the door." Mr. Golding testified he

encouraged claimant to think about it, but claimant at that point headed out the door. As claimant was walking through the door, Mr. Golding asked claimant for his keys. Apparently, claimant had difficulty getting the keys off of his key ring, and a verbal altercation occurred in the parking lot, with Mr. Golding threatening to call the police if claimant did not give him the keys. Claimant did not return to work after that incident.

For his part, claimant testified that he told Mr. Golding that he was unwilling to work with the coworker "right now," and that he did not say "forever." He further testified that at some point on Tuesday he told Mr. Golding that he could not work on Thursday night, which would have been the next night he would be working with the coworker, because he had a court date the following morning. According to claimant, when they met, Mr. Golding told him to quit if he could not get along with the coworker. He testified that Mr. Golding told him he had heard he was looking for another job, and then stated "you quit" and asked for his keys, at which point claimant told Mr. Golding that he was not quitting just because he was looking for another job.

Following the hearing, the ALJ upheld the claims adjudicator's denial of unemployment benefits, stating that claimant chose to leave his job after his employer gave him the choice of continuing to work with his coworker or leaving. The ALJ concluded that, given the reasons claimant gave for not wanting to work with the coworker, his decision to quit the job was not for good cause attributable to the employer.

On appeal, at a hearing before the Board, claimant contended that the ALJ prevented him from presenting a witness who allegedly observed the parking lot altercation. Claimant also pointed out that in the document in which the Department of Labor requested separation information from the employer, admitted as Exhibit 2 at the ALJ hearing, the employer checked the box "fired" as the reason for separation. Claimant further noted that the second page of that document was missing. Claimant also stated that he received his final paycheck within seventy-two hours of his last day at work, which is consistent with a statute requiring that discharged employees be paid with seventy-two hours of their discharge. 21 V.S.A. § 342(b)(2).

For his part, Mr. Golding explained to the Board that he directed his personnel employee to check the "fired" box because he knew claimant had a family and wanted him to be able to get unemployment benefits. But the situation changed, he testified, when he learned from the Department that claimant had stated he was fired because he could not accept his employer's decision not to accommodate his visitation schedule with his children. Mr. Golding testified that he then felt he needed to set the record straight as to what actually happened with respect to claimant's separation.

Following the hearing, the Board upheld the ALJ's determination, concluding that claimant voluntarily initiated his separation from his employer by walking out the door after Mr. Golding gave him the choice of continuing to work with his coworker or leaving. The Board rejected claimant's procedural claims of error, stating that: (1) the missing page from Exhibit 2 was not critical because both claimant and the employer were present and testified at length at the proceeding before the ALJ; and (2) The ALJ acted within her discretion in excluding testimony about the altercation in the parking lot because the altercation took place after the separation had already occurred.

On appeal to this Court, claimant argues that he did not quit his job, but rather was fired. In support of this argument he cites: (1) the employer's checking of the box "fired" in Exhibit 2

2

and the missing page from that document; (2) an "End of Employment Verification" document from the Department of Children and Families in which the employer also indicated that claimant was fired; (3) his testimony that Mr. Golding told him he quit; (4) the fact that his witness was not allowed to testify about the parking lot altercation; (5) his lack of notice prior to the initial hearing concerning how to submit evidence; (6) the fact that he was paid back wages within seventy-two hours, which is consistent with a statute regarding discharged employees; and (7) the fact that Mr. Golding changed his story from claimant being fired to claimant quitting.

The pertinent issue in this case is not whether claimant quit for good cause—claimant does not challenge the determination that his refusal for personal reasons to work with a coworker could not be considered good cause attributable to his employer for him to quit. Rather, at issue is whether claimant quit or was fired. "In determining whether a separation from employment is a discharge or a voluntary quit, we look to the intent of the parties at the time of separation." Kelley v. Dep't of Labor, 2014 VT 74, ¶ 10. Here, Mr. Golding testified that he gave claimant the choice of working out his personal problems with the coworker or leaving his job, and claimant chose to leave. Claimant's version is that the employer fired him by insisting that he, claimant, had quit because he was looking for another job. In support of his position, claimant points to forms in which the employer indicated that claimant was fired. Mr. Golding responds that he did so because he wanted claimant to be able to receive unemployment benefits, but that he felt obligated to report what actually happened when the Department informed him that claimant had indicated he was fired because he would not accept the employer's refusal to change his work schedule to accommodate his visitation schedule with his children.

Here, the ALJ, as factfinder, found in favor of the employer, and the Board accepted the ALJ's findings. "The sole question presented for our review is whether the evidence supported the Board's findings" and determination. Branch v. Dep't of Emp't. Sec., 142 Vt. 609, 610 (1983). Our standard of review is clear: "we are to affirm the findings of the Board as long as there is credible evidence to support them, even if there is substantial evidence to the contrary." Id. Further, "[t]he weight to be given the testimony and the inferences to be drawn therefrom are matters properly for the Board, not this Court." Frost v. Dep't of Emp't Sec., 135 Vt. 39, 40 (1977). Here, there was evidence in the record—the employer's testimony, much of which was substantiated by claimant—to support the Board's adopted findings, which in turn were sufficient to support the Board's determination that claimant voluntarily quit his job. Cf. Branch, 142 Vt. at 610 (stating that Board, as factfinder, was free to accept or reject any evidence, and its acceptance of one party's evidence rather than other's is not basis for reversal as long as there was some evidence to support its decision).

We recognize that the employer initially indicated on separation documents that claimant was fired, and this is a factor that the ALJ could have considered in weighing the evidence and assessing the credibility of the witnesses. However, we cannot say that as a matter of law the employer's indication on the check-box is determinative. In the face of an employer who has testified that claimant voluntarily quit, the form is relevant evidence, but it does not require a finding that claimant was fired. Moreover, on appeal before the Board, the employer explained its reasons for initially indicating that claimant was fired.

The fact that the form entered into evidence was incomplete is concerning; the more detailed explanation of the circumstances surrounding the end of claimant's employment that the employer presumably provided on the missing page may well have impacted the ALJ's

3

assessment of the parties' stories. However, claimant acknowledged on the record that he had the form in hand at the beginning of the ALJ hearing, and he did not object to using the Exhibit or argue that it was incomplete. Under these circumstances, we cannot say as a matter of law that the Board abused its discretion in declining to remand the case to the ALJ for consideration of that additional piece of missing evidence.

With regard to the second document claimant has identified that reflects the employer's indication to the State that claimant was fired—an employer-verification form filed with the Department of Children and Families, we conclude that the ALJ did not abuse her discretion in declining to admit the exhibit as evidence. Although she could have ruled otherwise—the document was arguably probative of the employer's credibility with respect to the circumstances surrounding the end of claimant's employment—the document was also cumulative, as the ALJ had already admitted an exhibit reflecting the employer's indication to the Department of Labor that claimant was fired. Accordingly, the ALJ did not abuse her discretion in declining to admit a second document of the same nature.

We recognize that claimant's own testimony differed from Mr. Golding's, and that Mr. Golding's own statements about the end of claimant's employment changed between the time he filled out the initial form for the Department of Labor and when he testified in the hearing. We will not reverse the Board's decision on either basis. As we have noted above, the weight to be given to evidence, including determinations of credibility, are matters for the Board's consideration, not this Court's.

Further, we concur with the Board that the ALJ acted within her discretion in not taking testimony on an alleged verbal altercation in the parking lot between claimant and Mr. Golding after the separation occurred. Indeed, the statement of claimant's proffered witness was simply that Mr. Golding was angry and threatened to call the police if claimant did not return the keys.

Nor was the employer's timing in giving claimant his final paycheck determinative as a matter of law of whether he was fired. The applicable statute provides that an employee who is discharged from employment must be paid within seventy-two hours of his or her discharge, whereas an employee who quits voluntarily may be paid on the last regular pay day. 21 V.S.A. § 342(c). The fact that the employer paid him within seventy-two hours, claimant argues, shows that the employer believed him to have been fired. Again, this evidence may be relevant to the Board's consideration of the parties' testimony, but we cannot say as a matter of law that it requires a conclusion that claimant was fired. The Board's conclusion that he was fired was supported by Mr. Golding's testimony, and the fact that other evidence exists that may arguably cast doubt on the credibility of that testimony does not mean the Board's conclusion is unsupported by any credible evidence.

Finally, we consider claimant's argument that the initial mail from the Department of Labor was addressed to his former employer, and that he did not receive notice of how to submit evidence at his hearing. In reviewing the transcript, we conclude that claimant was fully able to present his evidence. He sent proposed exhibits to the ALJ in advance and requested that they be considered. The fact that the ALJ declined to admit some of the evidence was not due to flaws in claimant's presentation; the ALJ's decisions were based on an exercise of her discretion. Moreover, with respect to the exhibit that has been the subject of the most discussion on appeal—the employer's response to the DOL's request for separation and payment

4

information—the ALJ explicitly asked claimant whether he had any objections and he said he did not.[*]

      <u>Affirmed</u>.

BY THE COURT:

_____

Marilyn S. Skoglund, Associate Justice

_____

Beth Robinson, Associate Justice

_____

Harold E. Eaton, Jr., Associate Justice

---

[*] The employer has moved to strike three documents submitted by plaintiff in this appeal but not part of the record below. We have not relied on documents outside the record in reaching our decision, and thus dismiss the motion to strike as moot.