*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-474

AUGUST TERM, 2015

| | | |
|---|---|---|
| Bruce Willette | } | APPEALED FROM: |
| | } | |
| | } | Employment Security Board |
| v. | } | |
| | } | |
| Department of Labor | } | |
| (Washington County Youth Services, Inc., | } | DOCKET NO. 09-14-138-01 |
| Employer) | } | |

In the above-entitled cause, the Clerk will enter:

Claimant appeals pro se from the denial of his application for unemployment compensation benefits. We reverse.

Claimant applied for unemployment benefits in September 2014. A claims adjudicator denied his request, finding that claimant had been discharged by his employer for gross misconduct connected with his work. Claimant appealed, and following a hearing before an administrative law judge (ALJ), the ALJ sustained the decision of the claims adjudicator. The ALJ made the following findings. Claimant was employed for eight years by Washington County Youth Services, Inc. He worked as an overnight staff member at a group home called Return House. Smoking was allowed on a deck of the home and employer had a policy/rule that only one resident was allowed on the smoking deck at a time. If a staff member accompanied the residents, then two residents could be on the smoking deck.

At 2:30 a.m. on August 31, 2014, claimant allowed four residents to go out onto the smoking deck. Claimant did not accompany the residents. While on the smoking deck, one resident intentionally burned two other residents with his cigarette. When the director of Return House learned what had happened, she discharged claimant for failing to follow the smoking-deck policy, which resulted in two residents getting burned.

The ALJ concluded that claimant was disqualified for benefits under 21 V.S.A. § 1344(a)(2)(B) because he had been discharged for gross misconduct connected with his work. The ALJ found that claimant was responsible for protecting the residents from harm; he disregarded employer's policy by allowing four residents to be on the smoking deck; and due to his negligence, two residents were injured. By blatantly disregarding employer's policy concerning the smoking deck, claimant failed to protect the residents from harm. As this was the reason for his discharge, the ALJ concluded that the discharge was for gross misconduct.

Claimant appealed to the Employment Security Board. The Board adopted the ALJ's findings and conclusions as its own, and denied claimant's request for benefits. This appeal followed.

Claimant argues on appeal that employer failed to show that there was a hard-and-fast rule concerning the smoking deck. Claimant asserts that he was allowed to use his judgment in applying the rule and he cites testimony that he believes supports his position. Claimant also asserts that the director erroneously testified that the smoking-deck rule had been in place since the group-home program began. He suggests that this misstatement should have drawn the director's credibility into question. According to claimant, his dismissal stemmed from the fact that he exercised poor judgment, rather than from his violation of the smoking-deck rule.

On review, we defer to the Board's decision and presume that decisions within its expertise are "correct, valid, and reasonable." Kelley v. Dep't of Labor (Maple Leaf Farm Ass'n, Inc.), 2014 VT 74, ¶ 6 (quotation omitted). The Board's findings will stand unless clearly erroneous, and its conclusions will stand if supported by the findings. Id.

A person is disqualified from receiving benefits where:

> He or she has been discharged by his or her last employing unit for gross misconduct connected with his or her work. As used in this section, "gross misconduct" means conduct directly related to the employee's work performance that demonstrates a flagrant, wanton, and intentional disregard of the employer's business interest, and that has direct and significant impact upon the employer's business interest, including theft, fraud, intoxication, intentional serious damage to property, intentional infliction of personal injury, any conduct that constitutes a felony, or repeated incidents after written warning of either unprovoked insubordination or public use of profanity. . . .

21 V.S.A. § 1344(a)(2)(B).[1] "The burden of proof is on the employer to establish misconduct." Mazut v. Dep't of Emp't & Training, 151 Vt. 539, 541 (1989).

While claimant believes he had flexibility in enforcing the smoking-deck rule and testified to this effect below, the Board found otherwise and its finding is supported by the evidence. The director of Return House testified that the rule since the inception of the program had been that only one resident at a time was allowed on the smoking deck. This rule applied to the overnight shift. The director emphasized that the rule was addressed on numerous occasions during staff meetings and everyone, including the residents, was well aware of the rule. She testified that claimant was discharged because he flagrantly broke the rule and two residents were injured as a result. She explained that claimant's primary

---

[1] The definition of "gross misconduct" was added by the Legislature effective July 1, 2011. See 2009, No. 124 (Adj. Sess.), § 7.

responsibility was to supervise residents and ensure that the rules and boundaries were followed, and he failed to do so. The Board credited the director's testimony, and it is for the fact-finder, not this Court, to assess the weight and credibility of the evidence. Ellis v. Dep't of Emp't Sec., 133 Vt. 533, 536 (1975). We note that even if the rule was not in place since the inception of the program, as claimant asserts, there is ample evidence to show that it was in place during the time at question and that claimant had been made aware of it.

We are not persuaded, however, that employer carried its burden of demonstrating that claimant's dismissal was for gross misconduct as defined by statute.[2] The latter, as noted, defines "gross misconduct" as conduct that "demonstrates a flagrant, wanton, and intentional disregard of the employer's interest" and that has a "direct and significant impact on the employer's business interest, including theft, fraud, intoxication, intentional serious damage to property, intentional infliction of personal injury, any conduct that constitutes a felony, or repeated incidents after written warning of either unprovoked insubordination or public use of profanity." 21 V.S.A. § 1344(a)(2)(B).

Although simple "misconduct" is not defined by statute, we have described it in similar terms. See, e.g., Favreau v. Dep't of Emp. & Training, 151 Vt. 170, 172 (1989) ("To be disqualified from benefits, an employee's misconduct must be in substantial disregard of the employer's interest, his disregard being either willful or culpably negligent."); In re Gray, 127 Vt. 303, 305-06 (1968) ("Although it would be inappropriate to attempt to delineate all aspects of disqualifying misconduct . . ., substantial disregard of the employer's interest, either wilful or culpably negligent, is the kind of conduct penalized.").

It is significant, therefore, that the statute delineates a series of specific examples of the type of egregious behaviors included within the definition of "gross misconduct." If the statutory distinction between misconduct and gross misconduct is not to be eviscerated, these examples—which include theft, fraud, intoxication, conduct constituting a felony, intentional harm to person or property, and repeated insubordination in the face of warnings—must guide our decision as to whether claimant's conduct met the standard of gross misconduct. See Tarrant v. Dep't of Taxes, 169 Vt. 189, 196-97 (1999) ("[W]e presume that the Legislature adds and removes statutory language advisedly."). Applying the familiar principle that we construe a statute to "include only those things similar in character to those specifically defined," Vt. Baptist Convention v. Burlington Zoning Bd., 159 Vt. 28, 30 (1992) (quotation omitted), we conclude that claimant's conduct here falls short of meeting the standard for gross misconduct. Violating a workplace rule, even one designed to protect a relatively vulnerable population, may well constitute misconduct, but the record here contains no other evidence demonstrating that the violation was of a similar character to the kinds of egregious or repeated misconduct delineated in the statute. Accordingly, we conclude that the finding of gross misconduct is unsupported. We reverse the Board's judgment and remand. Our

---

[2] Although claimant, acting pro se, did not clearly and precisely raise this issue, his denial at the hearing that he "willfully did something wrong"' and related assertion that his conduct, even if mistaken and in violation of the rules, was a "lapse in judgment," effectively raised the point.

decision does not preclude the Department from taking the position, on remand, that claimant was terminated for misconduct.

Reversed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice