FILED

03/13/2025

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 22, 2024 Session

## DEENA BRELL v. DENIECE THOMAS, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 19CV-1038      Bonita Jo Atwood, Judge**

___

### No. M2024-00300-COA-R3-CV

___

This is an appeal of a denial of unemployment benefits. The issue presented is whether, under Tennessee's unemployment statutes, an employee who gives her employer notice of her resignation as of a certain date and is terminated by the employer prior to the effective resignation date is disqualified from receiving unemployment benefits on the ground that the employee voluntarily quit. The trial court affirmed the agency's decision denying benefits. Based upon the plain language of the relevant statutory provision, we conclude that the employee's actions do not constitute a voluntary decision to quit. Therefore, we reverse the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

David A. Kozlowski and Patricia Louise Sellars, Columbia, Tennessee, for the appellant, Deena Brell.

Jonathan Skrmetti, Attorney General and Reporter, and Jason R. Trautwein, Assistant Attorney General, for the appellee, Commissioner, Tennessee Department of Labor and Workforce Development.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Deena Brell was a staffing specialist at PeopleReady, a staffing company, from May 2015 through February 2019. On February 15, 2019, the branch manager held a staff meeting where Ms. Brell expected to receive a promotion to assistant branch manager. However, Ms. Brell did not receive a promotion and was upset. She submitted her two-week notice and sent an email to the human resources department requesting guidance on when her last day of work should be so that she could receive accrued PTO ("paid time off"). Ms. Brell asked if she could continue working through February 22 and take the next fifteen days off (using paid leave time), with her last official day being March 15. On the same day, February 15, 2019, the market manager sent Ms. Brell an email stating that the manager had received and accepted her resignation "effective February 22, 2019." In her email, the market manager copied another employee asking that employee to provide Ms. Brell with details "around COBRA and PTO time." Ms. Brell came to work and completed her shift on February 18, 2019. Later that day, the branch manager informed Ms. Brell that her employment was terminated effective that day. Ms. Brell received wages only through February 18, 2019.[1]

On March 3, 2019, Ms. Brell submitted a claim for unemployment benefits to the Tennessee Department of Labor and Workforce Development ("the Department"). After initially informing Ms. Brell that she qualified for unemployment benefits, the Department sent her a letter stating that it had determined that she voluntarily quit her job and, therefore, did not qualify for unemployment benefits. Ms. Brell appealed this decision to the appeals tribunal, which held a hearing[2] and affirmed the Department's decision. Ms. Brell then appealed to the commissioner's designee, who affirmed the appeals tribunal.

---

[1] In its decision, which the trial court affirmed, the commissioner's designee made the following key factual findings:

> [O]ne hour later [after Ms. Brell submitted her February 15 resignation email to human resources], she receives an E-mail from the Market Manager who formally accepts the Claimant's resignation effective February 22, 2019. . . .
>
> On Monday, February 18, 2019, after work, the Claimant receives a call from the Branch Manager who informs her not to return to work as per instructions from the Regional Manager, no further details provided. The Claimant expected to receive wages through February 22, 2019, and compensation for her accrued paid time off; however, she only received wages through February 18, 2019.

These factual findings are not in dispute.

[2] PeopleReady, Ms. Brell's employer, did not participate in the proceedings before the Department or the chancery court.

On July 2, 2019, Ms. Brell filed a petition for judicial review with the Rutherford County Chancery Court. After a hearing in November 2023, the chancery court affirmed the decision of the commissioner's designee. In reaching this result, the court reasoned that "Ms. Brell did not take all necessary and reasonable steps to protect her employment" and rejected Ms. Brell's argument that the precipitating event for her unemployment was a termination. The court concluded that there was substantial and material evidence to support the decision of the commissioner's designee.

Ms. Brell appeals the chancery court's decision and raises the issue of whether an employee who submits his or her resignation but is terminated before the resignation becomes effective has voluntarily left his or her employment.

STANDARD OF REVIEW

In reviewing the Department's decision, we apply the same statutory standard of review applicable in the chancery court:

> The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (A) In violation of constitutional or statutory provisions;
> (B) In excess of the statutory authority of the agency;
> (C) Made upon unlawful procedure;
> (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (E) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-7-304(i)(2); *see Hale v. Neeley*, 335 S.W.3d 599, 601 (Tenn. Ct. App. 2010) (stating that, when we review agency decisions in unemployment compensation cases, we apply the same standard of review as the trial court). The task of appellate courts under Tenn. Code Ann. § 50-7-304(i)(2) is to take a "fresh look" at the Department's decision, not the lower court's decision. *Prac. Ventures, LLC v. Neely*, No. W2013-00673-COA-R3-CV, 2014 WL 2809246, at *8 (Tenn. Ct. App. June 19, 2014).

A decision is "arbitrary and capricious" if it "'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011) (quoting *City of Memphis v. Civ. Serv. Comm'n*, 238 S.W.3d 238, 243 (Tenn. 2007)). Substantial and material evidence is "'such relevant evidence as a rational mind might accept to support a

rational conclusion'" and which "furnishes a reasonably sound factual basis for the decision being reviewed." *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993) (quoting *Clay Cnty. Manor v. State Dep't of Health & Env't*, 849 S.W.2d 755, 759 (Tenn. 1993)). The substantial and material evidence standard is "less than a preponderance of the evidence and more than a 'scintilla or glimmer' of evidence." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669 (Tenn. 2016) (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

When "the facts are undisputed, the issue of whether an unemployment compensation claimant voluntarily quit his or her employment presents a question of law," which we review de novo without a presumption of correctness. *Prac. Ventures*, 2014 WL 2809246, at *9.

ANALYSIS

The precise issue on appeal is whether the undisputed facts of this case constitute a voluntary quit within the meaning of Tenn. Code Ann. § 50-7-303(a)(1)(A)(i), which provides that a claimant is disqualified from benefits if he or she "left the claimant's most recent work voluntarily without good cause connected with the claimant's work."[3] The Department takes the position that Ms. Brell was properly determined to have voluntarily quit because she "chose to resign because she was not promoted." The Department further asserts that a "reasonable person would know that sending a resignation email is the type of voluntary act" that can lead to termination or be considered a voluntary quit. In challenging the Department's denial of benefits, Ms. Brell argues that her unemployment resulted from her employer's decision to terminate her immediately after she gave notice of her resignation.

This case requires us to interpret the Tennessee Employment Security Law, Tenn. Code Ann. §§ 50-7-101 to -913. Tennessee's unemployment statutes were designed to ameliorate "the harsh economic effects of involuntary unemployment on workers and their families." *Sims v. Culpepper*, No. 01A01-9605-CH-00229, 1998 WL 32703, at *2 (Tenn. Ct. App. Jan. 30, 1998). Under the Tennessee Employment Security Law, the burden is on the claimant to establish his or her entitlement to unemployment benefits in accordance with Tenn. Code Ann. 50-7-302(a), which sets forth the personal eligibility conditions. *Reichenberger v. Thomas*, No. W2023-00441-COA-R3-CV, 2024 WL 1924919, at *1, (Tenn. Ct. App. May 1, 2024). However, in the present case, the Department does not assert that Ms. Brell failed to satisfy those conditions. Instead, the Department asserts that Ms. Brell's actions are properly categorized as a "disqualifying event" under the statute. Tennessee Code Annotated section 50-7-303(a), the statutory provision at issue here,

---

[3] The issue of "good cause" is not before the Court in this appeal.

- 4 -

addresses reasons that an otherwise eligible claimant will be disqualified from receiving unemployment benefits. That section provides, in pertinent part, as follows:

> DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:
>
> (1)(A)(i) If the administrator finds that the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work.

Tenn. Code Ann. § 50-7-303(a). The burden is on the employer to establish that a claimant is disqualified from receiving benefits. *Newman v. Davis*, No. W2013-00696-COA-R3-CV, 2014 WL 507100, at *7 (Tenn. Ct. App. Feb. 7, 2014).

In interpreting a statute, our fundamental goal is to ascertain and give effect to the legislature's intent. *Flade v. City of Shelbyville*, 699 S.W.3d 272, 285 (Tenn. 2024). Here, the legislature has included in the Employment Security Law a statement of public policy, which includes the following declaration:

> Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state; therefore, involuntary unemployment is a subject of general interest and concern that requires action by the general assembly to prevent its spread and to lighten its burden that now so often falls with crushing force upon the unemployed worker and the worker's family.

Tenn. Code Ann. § 50-7-102(a)(1). Tennessee courts have held that, in light of their purposes, the unemployment compensation statutes "'should be construed liberally in the employee's favor and . . . the disqualification provisions in the statutes should be construed narrowly.'" *Newman*, 2014 WL 507100, at *7 (quoting *Armstrong v. Neal*, 725 S.W.2d 953, 955 (Tenn. Ct. App. 1986)). At the same time, "this latitude is extended only to fulfill the legislature's intent to assist those who are involuntarily unemployed through no fault of their own." *Prac. Ventures*, 2014 WL 2809246, at *9.

In order to ascertain the legislature's intent, we look first to the language of the statute at issue and "give the statute's words 'their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Flade*, 699 S.W.3d at 285 (quoting *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019)). What does the term "voluntary" mean in the context of leaving one's employment? In *McPherson v. Stokes*, 954 S.W.2d 749 (Tenn. Ct. App. 1997), the court discussed the "voluntary quit" provision and stated:

> An employee need not form a specific intent to quit his or her job to be disqualified to receive unemployment compensation benefits under Tenn.

Code Ann. § 50-7-303(a)(1). Courts will find that an employee has voluntarily terminated employment if the employee fails to take all necessary and reasonable steps to protect his or her employment. *Freeman v. District of Columbia Dep't of Employment Servs.*, 568 A.2d 1091, 1093 (D.C. 1990); *In re Claim of Bonilla*, 233 A.D.2d 735, 650 N.Y.S.2d 360, 361 (1996); *Zielinski v. Unemployment Compensation Bd. of Review*, 174 Pa. Super. 244, 101 A.2d 419, 420 (1953). Accordingly, a voluntary act or failure to act with knowledge that termination may follow can be considered a voluntary leaving. *Smith v. Department of Employment Sec.*, 55 Wash. App. 800, 780 P.2d 1335, 1336 (1989); Paul H. Sanders, DISQUALIFICATION FOR UNEMPLOYMENT INSURANCE, 8 Vand. L. Rev. 307, 317-20 (1955).

In this context, the word "voluntarily" connotes the employee's volition or will in contrast to conduct compelled by the employer. *Cruz v. District of Columbia Dep't of Employment Servs.*, 633 A.2d 66, 70 (D.C. 1993); *Dingmann v. Travelers Country Club*, 420 N.W.2d 231, 233 (Minn. Ct. App. 1988); *Chandler v. Department of Employment Sec.*, 678 P.2d 315, 320 (Utah 1984). Voluntary acts are ones taken on the employee's own motion or accord. *Moulton v. Iowa Employment Sec. Comm'n*, 239 Iowa 1161, 34 N.W.2d 211, 213 (1948); *Kentucky Unemployment Ins. Comm'n v. Young*, 389 S.W.2d 451, 453 (Ky. Ct. App. 1965).

*McPherson*, 954 S.W.2d at 751. Thus, a voluntary quit is one "taken on the employee's own motion or accord" and is not "compelled by the employer."[4] *Id.*

These general principles do not provide clear guidance as to how a court should view the facts of this case, where an employee makes the voluntary decision to announce her resignation as of a future date, and the employer then chooses to terminate the employee prior to that date and to cease paying the employee immediately. At what point do we assess the voluntariness of the employee's act? Arguably, for an employee to have left work voluntarily on a certain date, the employee must have, through words or actions, chosen to leave that employment at that time.[5]

---

[4] The language excluding an employee from benefits when the employee "left work voluntarily" was included when the unemployment statute was enacted in 1947. 1947 Tenn. Pub. Acts ch. 29. In 1947, "voluntary" meant "[p]roceeding from the will, or from one's own choice or full consent; produced in or by an act of choice." *Voluntary*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1938). This definition is consistent with the principles discussed in *McPherson*.

[5] We note that this case is distinguishable from a situation where an employer chooses to have the resigning employee cease working immediately but continues to pay the employee through the resignation date. In the latter circumstance, the end of employment on the resignation date would clearly be voluntary.

In the absence of caselaw in Tennessee, we consider decisions from other states as persuasive, but not binding, authority. *See, e.g., Summers Hardware & Supply Co., Inc. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990) ("Cases from other jurisdictions . . . are always instructive, sometimes persuasive, but never controlling in our decisions."). The vast majority of the decisions from other states hold that an employee does not voluntarily leave work when the employee is terminated prior to the effective date of his or her resignation. *See Porter v. Fla. Unemp. Appeals Comm'n*, 1 So.3d 1101, 1103 (Fla. Dist. Ct. App. 2009) ("Other state courts deciding the question overwhelmingly hold that an employee who submits a voluntary notice of resignation is not disqualified from receipt of benefits when he or she is terminated prior to the effective date of the resignation."). We find the case of *Kelley v. Department of Labor*, 101 A.3d 895 (Vt. 2014), particularly instructive.[6]  In that case, the claimant, Katherine Kelley, resigned in writing on August 29, 2013, over a conflict with a supervisor and stated that her last day would be September 19, 2013.  *Kelley*, 101 A.3d at 896.  After this, Ms. Kelley continued to work for her employer. *Id.*  However, four days later, on September 3, the employer terminated her employment. *Id.*  Thereafter, Ms. Kelley applied for unemployment benefits. *Id.*  The employment security board ultimately concluded that Ms. Kelley "did not leave her employment voluntarily even though she had tendered her resignation because employer discharged her during her period of notice." *Id.* Therefore, the board ruled that Ms. Kelley was entitled to benefits beginning on September 21, 2013,[7] and the employer appealed. *Id.* at 897.

The Vermont Supreme Court agreed with the employment security board's interpretation of the statute, which disqualified a claimant if he or she "'left the employ of his or her last employing unit voluntarily without good cause attributable to such employing unit.'" *Id.* at 897 (quoting 21 V.S.A. § 1344(a)).  The Court determined that, based upon the plain meaning of the statute, Ms. Kelley *left* work on the day "that [the] employer terminated her employment and escorted her off the premises." *Id.*  And, the Court reasoned, the day Ms. Kelley left her employment was the relevant date for purposes of determining whether her employment was voluntary or involuntary. *Id.*  In addressing whether a claimant quit or was fired, the Court looked to "the intent of the parties at the time of the separation." *Id.*  The Court continued on to conclude that:

---

[6] *Kelley* involved a statute that is largely similar to Tennessee's unemployment statute. Because of this, *Kelley* is particularly persuasive. *See, e.g., Shelby Cnty. Health Care Corp. v. Baumgartner*, No. W2008-01771-COA-R3-CV, 2011 WL 303249, at *12 n.14 (Tenn. Ct. App. Jan. 26, 2011) (stating that, generally, "to be persuasive authority, it must appear that the other jurisdiction was applying or interpreting a statute similar to the Tennessee statute at issue in pertinent part").

[7] This beginning date of benefits was based upon Ms. Kelley's receipt of accrued vacation pay. *Id.* at 896.  In its opinion, the Court distinguished between wages and annual leave and rejected the employer's argument that its payment of vacation pay for the notice period rendered Ms. Kelley's separation voluntary. *Id.* at 899.

- 7 -

Here, the record supports the finding of the referee and the Board that claimant's intent on September 3 was to work for another two and a half weeks and that employer previously had agreed that she could do so. Were it not for employer's action on September 3, the employment relationship would have continued until September 19, and claimant would have voluntarily left her employment on that date. The record also shows that employer's intent on September 3 was to fire claimant. A representative of employer testified that after claimant gave her notice, employer received a complaint from a client, which led employer to conclude that "it would be disruptive to have her work out her notice." Employer therefore decided to end claimant's employment immediately. Employer's action in escorting claimant from the premises was consistent with a discharge rather than a voluntary resignation.

*Id.* at 898.

The Vermont Supreme Court went on to distinguish the case before it from its decision in *MacDonald v. Department of Employment Security*, 385 A.2d 1117 (Vt. 1978). In *MacDonald*, a restaurant employee gave two weeks' notice of her resignation, and her employer informed her that no notice was required or customary and that she could remain employed or leave immediately. *MacDonald*, 385 A.2d at 1118. The employee left immediately. *Id.* She applied for unemployment benefits and was denied by the employment security board on the ground that she left her work voluntarily without good cause. *Id.* In affirming this result, the Court made the following statement: "Absent an employment contract provision or a trade usage as to notice to quit, an employee's options do not include a right to specify a future effective date of termination. A voluntary quit is without good cause if it is conditioned in a manner not within the options open to the employee." *Id.* The Court also emphasized that the employee "was given the choice of remaining on the job or leaving immediately" and that "she chose the latter." *Id.* In its decision in *Kelley*, the Vermont Supreme Court reasoned that the case before it differed from *MacDonald* in two important ways: (1) although Ms. Kelley's employer did not require at-will employees to provide notice prior to resigning, company policy requested that employees give two weeks' written notice; and (2) after Ms. Kelley resigned, her employer agreed to allow her to continue working until September 19, whereas the employee in *MacDonald* had no option to work through the notice period. *Kelley*, 101 A.3d at 898.

Finally, the Court in *Kelley* rejected the employer's argument that Ms. Kelley's eligibility for unemployment benefits was limited to the period between the date that she actually left her employment and the effective date of her resignation. *Id.* at 899-900. The Court emphasized that the statute in effect at the time of Ms. Kelley's termination "did not limit eligibility under these circumstances." *Id.* at 900. Although the statutory provision was later amended, the Court cited caselaw requiring no exclusion from benefits without a

clear intention to do so in the law and could not "conclude that prior to this amendment the Act precluded claimant from receiving benefits beyond that date."[8] *Id.*

We agree with the reasoning in *Kelley*, a case involving essentially the same statutory language as the operative language in the Tennessee statute:  a disqualification from benefits for an employee who left work voluntarily without good cause.  In the present case, Ms. Brell gave notice of her resignation on February 15, 2019, and her supervisor agreed in writing that the resignation would be effective on February 22, 2019.  However, Ms. Brell's employment ended on February 18, 2019, and the reason she left on that day was that her employer terminated her employment.  Under Tennessee law, the unemployment statutes are to be "construed liberally in the employee's favor and . . . the disqualification provisions in the statutes should be construed narrowly." *Newman*, 2014 WL 507100, at *7.  This "latitude" aims to "fulfill the legislature's intent to assist those who are involuntarily unemployed through no fault of their own." *Prac. Ventures*, 2014 WL 2809246, at *9.  Under the facts of this case, Ms. Brell's unemployment on February 18, 2019, was unexpected and "through no fault of [her] own."

In arguing that Ms. Brell's unemployment should be considered voluntary, the Department cites the principle that, "Courts will find that an employee has voluntarily terminated employment if the employee fails to take all necessary and reasonable steps to protect his or her employment." *McPherson*, 954 S.W.2d at 751.  The Department does not, however, support its statement that "[a] reasonable person would know that sending a resignation email is the type of voluntary act that can 'be considered a voluntary leaving'

---

[8] States are currently split on whether an employee can receive unemployment benefits for the period after the effective resignation date when the employer terminates the employee before the effective resignation date. *Compare Porter,* 1 So.3d at 1103, *and Dillard Dep't Stores, Inc. v. Polinsky*, 530 N.W.2d 637, 643 (Neb. 1995), *and W. Jordan v. Morrison*, 656 P.2d 445, 446-47 (Utah 1982), *and Vieweg v. Gatson*, 546 S.E.2d 267, 270-71 (W. Va. 2000), *and Mauro v. Adm'r, Unemp. Comp. Act*, 113 A.2d 866, 866-67 (Conn. Super. Ct. 1954), *and Cotright v. Doyal*, 195 So.2d 176, 179 (La. Ct. App. 1967), *and Coleman v, Miss. Emp. Sec. Comm'n*, 662 So.2d 626, 628 (Miss. 1995) (holding that when an employer terminates an employee before the effective resignation date, the employee did not leave work voluntarily and cannot be disqualified from unemployment benefits on that basis even for the period after the redesignation date); *with Diringer v. Indus. Comm'n of the State of Colo.*, 712 P.2d 1091, 1091-92 (Colo. App. 1985), *and Mason v. Donnelly Club*, 21 P.3d 903, 908 (Idaho 2001), *and Redline Express, Inc. v. State of Kan. Emp. Sec. Bd. of Rev.*, 11 P.3d 85, 89 (Kan. Ct. App. 2000), *and Stephen's Nu-Ad, Inc. v. Green*, 423 N.W.2d 625, 627-29 (Mich. Ct. App. 1988), *and Ennis v. Emp. Div.*, 587 P.2d 102, 103 (Or. Ct. App. 1978), *and Amado v. Unemp. Comp. Bd. of Rev.*, 110 A.2d 807, 808 (Pa. Super. Ct. 1955) (holding that, when an employer terminates an employee before the effective resignation date, the employee is only eligible for unemployment benefits between the date of termination and the resignation date).  This precise issue is not before us.  We note, however, that the results in these cases turn on the language of the statutes and any applicable regulations and that, like the court in *Kelley*, we are not aware of any limit on eligibility in Tennessee's unemployment statutes under these circumstances.

or lead to termination."[9] *Kelley* and the overwhelming majority of decisions from other states do not support the Department's position that Ms. Brell's separation should be considered voluntary. *See, e.g., Porter*, 1 So.3d at 1103; *Vieweg v. Gatson*, 546 S.E.2d 267, 270-71 (W.Va. 2000); *Dillard Dep't Stores, Inc. v. Polinsky*, 530 N.W.2d 637, 643 (Neb. 1995); *Coleman v. Miss. Emp. Sec. Comm'n*, 662 So.2d 626, 629 (Miss. 1995); *West Jordan v. Morrison*, 656 P.2d 445 (Utah 1982); *Ennis v. Emp. Div.*, 587 P.2d 102 (Or. Ct. App. 1978); *In re Baida*, 125 N.Y.S.2d 514, 515 (N.Y. App. Div. 1953) (cases holding that, when the employer terminated the employee prior to his or her effective resignation date, employee did not leave work voluntarily). The Department does not dispute that the weight of authority from other states is against its position. The Department cites four cases from other jurisdictions to the contrary, none of which support its argument in the present case.[10]

The Department contends that *McPherson* should control here, but *McPherson* differs greatly from this case. In *McPherson*, the employee failed to return to work after his leave of absence and instead requested another leave of absence. *McPherson*, 954 S.W.2d at 750. The employer told the employee that his leave request was not approved and "telephoned him several times to discuss his plans for returning to work." *Id.* at 750, 752. Additionally, the employer's leave form (which the employee had previously filled out) stated that "[f]ailure to return to work on the first scheduled work day following the expiration date of this leave will be considered a voluntary quit, and separation will occur."

---

[9] On the legal issue of whether Ms. Brell voluntarily quit, the commissioner's designee reasoned as follows:

> No policy or contract evidence required the Employer to extend the Claimant's employment through the effective date of her resignation, a date that she selected unilaterally. . . . No evidence established that she was duty-bound to offer advanced notice in her resignation. Finally, the Claimant's decision to resign prior to finding another job and prior to using her accrued paid time off, was entirely the Claimant's choice.
>
> To this end, the evidence is sufficient to find that the Claimant voluntarily left her job when she resigned on February 15, 2019, and that the Employer decided whether she continued her employment through the notice period.

[10] The Department cites *Bradford v. Director, Employment Security Department*, 128 S.W.3d 20, 22 (Ark. Ct. App. 2003), which involved the executive chief information officer in the Arkansas governor's office who resigned after making fraud allegations and was then terminated because he could not continue to perform the position as required. In our case, Ms. Brell was willing to continue working through her resignation date, and there is no proof that she was unable to perform her duties. In *Carswell v. Share House, Inc.*, 390 N.W.2d 252, 255 (Mich. Ct. App. 1986), the employee opted to resign immediately (without notice), although she could have continued working for two more weeks. *Weaver v. Commonwealth, Unemployment Compensation Board of Review*, 430 A.2d 1214 (Pa. Commw. Ct. 1981), involved a reduction in force, and the employee resigned from his union position knowing that he would thereby become subject to layoff. *MacDonald*, 385 A.2d at 1118, another case cited by the Department, was discussed at length above and is distinguishable on its facts because Ms. Brell was not given a choice as to whether she would continue to work or be terminated immediately.

*Id.* at 752. When the employee did not return to work over a month after his leave expired, his employer informed him that he was being "separated . . . as a voluntary quit." *Id.* at 750. Therefore, in *McPherson*, the employee knew that his employer had not approved his leave and chose not to return to work anyway. So, the employee voluntarily left his work. *Id.* at 752.

We agree with the majority view and, therefore, hold that the undisputed facts support a finding that Ms. Brell did not voluntarily terminate her employment. Thus, we conclude that the administrative decision denying an award of unemployment benefits to Ms. Brell is not supported by substantial and material evidence and is arbitrary and capricious. Accordingly, we reverse the trial court's decision.

CONCLUSION

We reverse the chancery court's ruling and remand for any other necessary proceedings. Costs of this appeal are assessed against the appellee, the Tennessee Department of Labor and Workforce Development, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE